NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

11-P-2150                                          Appeals Court


COMMONWEALTH  vs.  ABDULLAH MUHAMMAD SAYYID.[1]



No. 11-P-2150.

Worcester.      March 7, 2014. - October 6, 2014.

Present:  Katzmann, Rubin, & Carhart, JJ.


Due Process of Law, Probation revocation, Hearing.  Practice,
     Criminal, Revocation of probation, Probation, Stipulation,
     Waiver.  Intellectually Disabled Person.  Mental
     Impairment.  Waiver.



Indictments found and returned in the Superior Court
Department on July 30, 1999.

A proceeding for revocation of probation was heard by Kathe
M. Tuttman, J., and Peter W. Agnes, Jr., J., and a motion for
release from unlawful restraint was heard by Daniel M. Wrenn, J.


Eleanor Hertzberg for the defendant.
Stephen J. Carley, Assistant District Attorney, for the
Commonwealth.

---

[1] At the time of the probation revocation hearing, the
defendant's name was Anthony J. Conley.  He formally changed his
name to Abdullah Muhammad Sayyid through an order of the Probate
and Family Court in August, 2009.

KATZMANN, J.  The defendant, who is intellectually disabled, appeals from the denial, after an evidentiary hearing, of his claim that his attorney's stipulation to violation of conditions of probation contravened his due process rights. This appeal presents the questions whether, in a probation revocation proceeding, a stipulation to probation violations resulting in waiver of a hearing must be knowing and voluntary and whether a judge is under an obligation to directly address the defendant to ascertain that the waiver was knowing and voluntary.  We conclude that a defendant's agreement to waive a probation revocation hearing -- such as by stipulating to violations -- must be knowing and voluntary, that such waiver is to be assessed under the totality of the circumstances, and that although there may be sound judicial administration arguments for the promulgation of a rule codifying a contemporaneous waiver protocol, no particular colloquy is constitutionally required at the time of the waiver.  However, we further conclude that the record here does not support a determination that the defendant's waiver was knowing and voluntary.  We reverse.

Background.  After being examined for competency and criminal responsibility pursuant to G. L. c. 123, § 15(a), the defendant executed a waiver of rights and entered an Alford plea (North Carolina v. Alford, 400 U.S. 25 [1970]) to one count each

of rape of a child under sixteen by force in violation of G. L. c. 265, § 22A, and indecent assault and battery on a child under fourteen in violation of G. L. c. 265, § 13B.  A Superior Court judge ordered the defendant committed for a period of observation pursuant to G. L. c. 123, § 15(e), and then sentenced him in 2002 to from seven to eight years' incarceration on the offense of rape of a child under sixteen by force, with a recommendation that the sentence be served at Bridgewater State Hospital.  On the same date, the judge also sentenced the defendant on the count of indecent assault and battery on a child under age fourteen to three years' probation upon discharge from the sentence of incarceration.  The defendant was released from prison in 2007 at which time he began his probation.

At the time of his release from prison, the defendant executed an agreement, with the assistance of his legal guardian, Dr. Thomas Petrouski, to special conditions of probation.[2]  After an initial placement, the defendant was

---

[2] Those conditions included the following:

"1.  You must comply with the Department of Mental Retardation (DMR) rules and regulations.
2.  You must remain at the DMR Residential Treatment Program until its successful completion.
3.  You must comply with the Level II Skill Development Plan.
4.  You must participate in treatment evaluations.

transferred to a residential group home with twenty-four hour staff supervision in Winchendon under the authority of the Department of Mental Retardation (DMR).[3] The defendant was moved there due to "numerous concerns" that his behavior could not be controlled. During this period probation officer Marie Mercurio served a notice of violation to the defendant and filed a surrender on his probation for numerous allegations that he had violated his probation. This notice of violation was the subject of five separate court appearances. At the first court appearance, on March 21, 2008, Attorney Peter Clifford was appointed as counsel for the defendant. A different judge (revocation judge) handled the four additional hearings over the

---

5. You must participate in recommended treatment (anger management/emotional regulations and sex offender treatment).
6. You must participate in a medication evaluation and take any prescribed medications. You may seek a second opinion.
7. You may pursue employment if deemed appropriate by the DMR.
8. You must register as a sex offender.
9. You must stay away from and have no contact with children under the age of sixteen.
10. You must stay away from and have no contact with the victim.
11. You may contact biological children through mail or phone if approved by the Department of Social Services.
12. You must comply with the DNA statute.
13. You must abstain from drugs and alcohol.
14. You must stay away from and have no contact with [Jane Doe] [a pseudonym]."

[3] DMR is now the Department of Developmental Services.

course of the following six months,[4] reflecting his conscientious concern that the defendant's competency be established and the judge's proactive efforts to consider alternatives to incarceration.

At the April 18, 2008, hearing, probation officer Mercurio recited the alleged violations.  She reported that during his stay in the Winchendon home, the defendant engaged in numerous violations of the conditions of his probation and the DMR and Winchendon home rules.[5]  Noting that the defendant's guardian had

---

[4] The hearings occurred on April 18, 2008; May 23, 2008; June 3, 2008; and August 14, 2008.

[5] The alleged violations were as follows:  The defendant contacted a Jane Doe, with whom the probation conditions had forbidden contact, and used the telephone to do so in violation of house rules.  He stored cups of urine in his room, dressed himself in "full army fatigues . . . [and] boots," and again made telephone calls without permission to "900"-number-style sex chat lines.  During a visit to a country store near the group home, the defendant took a "video game or a DVD" from a display and "placed it in his jacket," attempting to steal it.  The store owners elected not to file charges on the condition that the defendant "never be brought back to that location again."  In addition, the defendant, while attending religious services, began a relationship with another woman and provided to her "his papers," including legal papers, and began exchanging money with her.  The defendant also established a relationship with the woman's daughter who, although not a child, was "a very slight, childlike-looking young lady."  The defendant's conduct in the home gave its operators concern that he was preparing to escape and live on the run.  The defendant was found storing a tarp in his room, which "could be used as shelter in the woods."  The Winchendon home was on a country road surrounded by trees and next door to a home with children and a daycare center "right around the corner."  The defendant had been seen wearing "fatigue[s]" regularly, and he stated to the house manager that "he would rather go back to jail than

failed to appear, the revocation judge declined to act on the defendant's motion to dismiss or to conduct a final violation hearing until the defendant could be evaluated for competency with the benefit of the guardian's presence.

On May 23, the revocation judge conducted another hearing and took testimony from the guardian, Dr. Petrouski. Dr. Petrouski expressed his "own personal opinion" that the defendant was not competent, that when he "is in front of the judge, he will pretty much agree to anything." The revocation judge, noting that his "first concern . . . is on this issue of competency," further observed:

> "The mere fact that someone has a guardian appointed, as perhaps everyone knows, doesn't mean that the person is not competent to stand trial, not competent to plead guilty as it were. And unless there's something that anyone who is here today knows that I don't know, I think it would be presumptuous of me simply because [the defendant] has a guardian, simply because the guardian reports that [the defendant] functions at a cognitive level that qualifies him for the services by the Department of Mental Retardation that when he pleaded guilty in this case or when his Alford plea was accepted that he was not competent

---

live by the rules." The defendant refused, contrary to DMR requirements, to see his mandated psychologist, Dr. Sorrentino, at the appointed time. He likewise refused to attend mandatory sex offender therapy on Wednesday, March 19, 2008, stating on that occasion "that he just didn't want to go." The house manager also discovered that the defendant had mailed letters to individuals to whom he had spoken on the chat lines. Some of those letters, directed to a woman living in Arkansas, were addressed to her by her first name followed by his last name, i.e., "[s]o it's almost to a Mrs. So-and-So Conley" (see note 1, supra). The defendant mailed a similarly addressed letter with respect to a woman, a cousin of one of his housemates, with whom he had gone bowling.

to stand trial.  I don't think I would make that finding just based on what I've heard. . . . [I]f it turns out that he's not competent to stand trial even though he may have been competent to plead guilty at some point in the past, then I'm not sure what options the court has, but the option of revoking his probation is not one of them."

Accordingly, the revocation judge ordered the defendant evaluated for competency pursuant to G. L. c. 123, § 15(a). On June 3, the same judge conducted a further hearing and noted that, since the prior hearing, the defendant had been evaluated and had been deemed legally competent.  In his forensic health report, Dr. Alan Schonberger had concluded that the defendant has "mental retardation, a mental defect" and that he appeared to be in the "mild mental retardation level" of intelligence. While opining that the defendant has "many of the abilities and understanding usually associated with CST [competency to stand trial]," Dr. Schonberger cautioned:

"Depending upon the demands placed upon him at a violation of probation hearing, in my opinion, will determine whether the court will find him either CST or Incompetent to Stand Trial (IST).  Thus if the demands of a hearing require following complicated testimony or comprehending difficult legal questions, then I would have concerns about his capacity to adequately follow those issues.  On the other hand if the demands at a hearing are more simple, then in my opinion [the defendant] is well able to handle those demands.  At present [the defendant] understands his charges and the potential consequences of those charges. He understands the roles of the attorneys and judge involved in the hearing.  While unable to define words like guilt, truth, or lie, [the defendant] demonstrates his capacity to comprehend these concepts when given relatively more simple examples.

"Due to his cognitive deficits, [the defendant's] thinking tends to be concrete and thus he will need to hear information in smaller chunks and in a more simplified manner in order to help him process it. He also will require additional time to process new information. In my opinion [the defendant] appears more marginal in terms of his CST in regards to more complicated legal issues, such as his understanding of a plea bargain. He will have a difficult time explaining the rights he might give up by accepting a particular plea option, and/or advantages in pursuing a particular course of action. (Of note, it remains unclear to me whether a plea bargain is even an option for a defendant in a violation of probation hearing and, if not, then this impairment is a moot point.) However, in my opinion, with adequate time and more simplified explanation, [the defendant] is able to comprehend necessary legal information to make rational decisions. Thus in my opinion no further evaluation of his CST is needed at this time." (Emphasis supplied).

At the June 3 hearing, Attorney Clifford acknowledged that competency had been established. Later in the same hearing, after the judge questioned DMR representatives at length regarding placement options other than incarceration, the judge said,

"Well, Mr. Clifford, let me direct a question to you. There was a fairly extensive presentation by the probation department at the earlier hearing that led me to the finding of probable cause, and I assume we would hear the same presentation again from Ms. Mercurio. Would you want an opportunity, if we were to treat this as a final hearing, to cross-examine the probation officer, and-or offer evidence yourself on the issue of whether [the defendant] violated his probation, versus what the disposition would be?"

In reply, Attorney Clifford objected to probation officer Mercurio's recitation of misconduct outside the scope of the violation notices. The revocation judge indicated such

misconduct would only be considered as to disposition, and posed the question to Attorney Clifford again. Mr. Clifford replied, "Sticking to the notices that have been filed, they're not in dispute. [The defendant] admits that he violated those terms of his probation." (Emphasis supplied). Based upon this representation, the revocation judge -- who did not question the defendant personally, inquire into his understanding of the stipulation, or inquire of counsel whether he had spoken to the defendant about the implications of a stipulation -- stated:

> "All right; then I will find, on the basis of the evidence that was presented earlier that was detailed by Ms. Mercurio about the conduct of [the defendant] while at . . . the home in question, which violated the rules of the home, his failure to submit to the conditions of probation, that he is in violation of terms and conditions of his probation, which through counsel he acknowledges."

As suggested by the judge, the defendant then requested an aid-in-sentencing evaluation to help formulate a plan that would provide an alternative to incarceration. The judge denied the defendant's motion to dismiss the probation violation allegations. On August 14, 2008, the judge held a final hearing as to disposition and, at its conclusion, sentenced the defendant to from five to eight years' incarceration. The judge, who had sought to assess alternatives to incarceration, concluded:

> "[The defendant's] record since he was placed on probation, regrettably, is that despite every effort made by the Probation Department, by the Department of Mental

Retardation, and by the people under contract with them, that the defendant has not been able to conform his conduct to the requirements of law.  Now, on that case, the only option is incarceration, unless a judgment is made that the violations are so trivial and the risk of harm is so slight that incarceration would be unjust and serve no valid reason.  That's not the case, unfortunately.  I have to say I think that the Probation Department is correct in identifying [the defendant] as a high-risk offender, and that's because his record suggests that he has not only committed serious offenses, but that . . . he just does not have the wherewithal to conform to the requirements of law."

On February 6, 2012, the defendant filed a motion for "release from unlawful restraint" pursuant to Mass.R.Crim.P. 30(a), as appearing in 435 Mass. 1501 (2001).  In support of his motion, the defendant alleged that "he did not knowingly or voluntarily stipulate to a violation of probation, or waive his right to a hearing on the merits."  Likewise, in his affidavit in support of his motion, the defendant averred that he "d[id] not remember if Attorney Clifford explained what it meant to stipulate to a violation of probation."  He further averred that he had "wanted the opportunity to explain [his] side of the story regarding the alleged violations of probation."  According to the defendant's affidavit, had he received "the opportunity to explain [his] side to the judge," he would have told the revocation judge a number of facts and reasons relating to the violations of his terms of probation, including that he "should [not] have been violated" for contacting Jane Doe, see note 5, supra, that he "did not break the rules at the group

home by using the phone," that he "did not store urine" in his room, and that the other allegations were either misunderstandings or did not actually constitute breaches of the house rules or the terms of his release. In his accompanying memorandum of law, the defendant repeated that he "did not himself stipulate to the violation of probation. The stipulation was made by his attorney."

On November 29 and December 21, 2012, a Superior Court judge who was not the revocation judge, and to whom we shall refer as the motion judge, conducted an evidentiary hearing on the defendant's motion for release, at which Attorney Clifford and the defendant testified.[6] As detailed below, the judge made findings and denied the defendant's motion.

Discussion. The defendant contends that the motion judge erred in denying his motion pursuant to Mass.R.Crim.P. 30(a).[7]

---

[6] Prior to the hearing, on the Commonwealth's motion, the motion judge declared the attorney-client privilege waived with respect to communications between Attorney Clifford and the defendant as to the probation violation matter and, specifically, as to the defendant's stipulation to the violations.

[7] The Commonwealth observes correctly in its brief that the defendant's motion was improperly filed pursuant to Mass.R.Crim.P. 30(a) because that subsection does not allow challenge to the procedural merits of a probation revocation. See Commonwealth v. Christian, 429 Mass. 1022 (1999). See also Reporter's Notes to Mass.R.Crim.P. 30(a), Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1659 (LexisNexis 2013-2014) ("In the context of a probation revocation order, a motion under Rule 30(a) would be appropriate only as a vehicle for

The defendant asserts that the revocation judge erred in his acceptance of the defendant's waiver of the right to a hearing without inquiring of him contemporaneously whether or not he understood the proceedings and the ramifications of a stipulation to the violations.

"The Commonwealth must prove a violation of probation by a preponderance of the evidence." Commonwealth v. Bukin, 467 Mass. 516, 520 (2014). "A probation violation proceeding is not considered to be a new criminal prosecution because the Commonwealth already has met its burden of proving guilt beyond a reasonable doubt." Commonwealth v. Pena, 462 Mass. 183, 190 (2012). "However, due process rights under the Fourteenth Amendment to the United States Constitution are implicated at such a hearing because a finding of violation of probation may result in loss of liberty." Commonwealth v. Patton, 458 Mass. 119, 125 (2010). "Where '[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special [conditions],' . . . 'a probationer need not be provided with the full panoply of constitutional protections applicable at a criminal trial.'" Ibid., quoting,

challenging the legality of the sentence the defendant received and not the legality of the order revoking probation"). The Commonwealth acknowledges that the motion could have been filed under rule 30(b) and does not challenge the appropriateness of our consideration of this appeal.

respectively, from <u>Gagnon</u> v. <u>Scarpelli</u>, 411 U.S. 778, 781 (1973)
(<u>Gagnon</u>), and <u>Commonwealth</u> v. <u>Durling</u>, 407 Mass. 108, 112
(1990).

As the defendant acknowledges, due process is a flexible
concept:

> "<u>Morrissey</u> [v. <u>Brewer</u>, 408 U.S. 471 (1972),] and <u>Gagnon</u>
> establish that the minimum requirements of due process
> include '"(a) written notice of the claimed violations of
> [probation or] parole; (b) disclosure to the [probationer
> or] parolee of the evidence against him; (c) opportunity to
> be heard in person and to present witnesses and documentary
> evidence; (d) the right to confront and cross-examine
> adverse witnesses (unless the hearing officer specifically
> finds good cause for not allowing confrontation); (e) a
> 'neutral and detached' hearing body such as a traditional
> parole board, members of which need not be judicial
> officers or lawyers; and (f) a written statement by the
> factfinders as to the evidence relied on and reasons for
> revoking [probation or] parole." <u>Morrissey</u> v. <u>Brewer</u>,
> <u>supra</u> at 489.' <u>Gagnon</u> v. <u>Scarpelli</u>, <u>supra</u> at 786."

<u>Commonwealth</u> v. <u>Durling</u>, <u>supra</u> at 113. <u>Commonwealth</u> v.
<u>Durling</u>, the touchstone case governing procedure in probation
revocation cases, notes, "[w]hile <u>Morrissey</u> and <u>Gagnon</u> identify
the components which make up a scheme satisfying due process,
the requirements of due process depend on the circumstances of
each case and an analysis of the various interests at stake."
<u>Id</u>. at 113-114. Indeed, cognizant of the liberty interest at
stake in probation revocation proceedings, the Supreme Judicial
Court has "taken a somewhat more expansive view than the [United
States] Supreme Court . . . ." <u>Commonwealth</u> v. <u>Patton</u>, 458
Mass. at 125 ("[W]henever imprisonment palpably may result from

a violation of probation, 'simple justice' requires that, absent waiver, a probationer is entitled to assistance of counsel").

No reported Massachusetts decision has addressed the proposition set forth by the defendant here -- namely, that in a probation revocation proceeding, a stipulation to probation violations resulting in waiver of a hearing must be knowing and voluntary and that a judge is under an obligation to directly address the defendant to determine that the waiver was knowing and voluntary. A decision of the United States Court of Appeals for the First Circuit, however, has addressed those very issues in United States v. Correa-Torres, 326 F.3d 18 (1st Cir. 2003) (Correa-Torres), and we find it to be instructive and persuasive. There, the court considered the "requirements [that] must be met when a probationer . . . purposes to waive his right to a revocation hearing under Federal Rule of Criminal Procedure 32.1." Id. at 20. That rule sets forth the same basic procedural rights reiterated in Durling.[8] In Correa-Torres, the First Circuit observed:

> "In our system of criminal justice, most rights can be waived. The rights enumerated in Rule 32.1 are no exception. As a general proposition, however, the waiver

---

[8] Federal Rule of Criminal Procedure 32.1(a)(2) (2000) (since 2003, Fed.R.Crim.P. 32.1[b][2]) requires: "(A) written notice of the alleged violation; (B) disclosure of the evidence against the person; (C) an opportunity to appear and to present evidence in the person's own behalf; (D) the opportunity to question adverse witnesses; and (E) notice of the person's right to be represented by counsel."

of virtually any right closely affecting individual liberty must be knowingly and voluntarily made. Because adherence to the processes prescribed by Rule 32.1 is instrumental to the fair and efficient operation of revocation proceedings, we hold that a waiver of the rights conferred thereunder cannot be effective unless that waiver is made both knowingly and voluntarily."

Correa-Torres, 326 F.3d at 22 (citations omitted). We agree.

Regarding the protocol to ensure that a waiver is knowing and voluntary, the First Circuit further observed:

"Because we are mindful that revocation proceedings are more informal than criminal prosecutions, we do not prescribe any particular mantra. Instead, we emulate several of our sister circuits and hold that, notwithstanding the requirement that waivers of procedural rights with respect to revocation hearings must be knowing and voluntary, such waivers need not be accompanied either by any magic words or by a formal colloquy of the depth and intensity required under Federal Rule of Criminal Procedure 11 (governing guilty pleas in criminal cases).

". . .

"Where, as here, a probationer . . . mounts a retrospective challenge to the validity of a waiver of Rule 32.1 rights, a reviewing court should look not only to the punctilio of the sentencing court's colloquy with the probationer . . . , but also to the totality of the attendant circumstances.

"The totality of the circumstances means exactly that -- all the circumstances should be considered. Still, some circumstances are likely to have particular relevance in the revocation hearing context. These include evidence that sheds light upon the target's comprehension of the charges against him and evidence as to his appreciation of the nature of the rights afforded him by Rule 32.1. In the final analysis, however, courts should beware of assigning talismanic significance to any single fact or circumstance. The question of waiver entails endless permutations, and each case is quite likely to be sui generis."

Id. at 23 (citations omitted).

In sum, we agree that a defendant's agreement to waive a probation revocation hearing -- such as by stipulating to violations -- must be knowing and voluntary and that such waiver can be assessed under the totality of the circumstances.  In Correa-Torres, when faced with the defendant's contention that his attorney's stipulation to a violation on his behalf could not effectuate a valid waiver because the record did not show that he understood his rights and waived them, the court held: "Apart from the absence of a specific finding, nothing in the record adequately evinces that the appellant understood the nature of the accusation that triggered the revocation proceeding."  Correa-Torres, 326 F.3d at 24.  "While such an express finding is not ordinarily required in connection with a waiver of rights, it is infinitely more difficult to find a valid waiver based on a silent record."  Id. at 23 (citation omitted).

In the case before us -- despite the evidentiary hearing focusing on the defendant's waiver -- the record remains deficient on the critical question:  whether the waiver by the intellectually disabled individual here was knowing and voluntary at the time of the stipulation.  While the motion judge made "a specific finding that the appellant's waiver was knowing and voluntary," ibid., we conclude that there is inadequate support for this determination.

Attorney Clifford's testimony[9] -- credited by the motion

judge -- does not establish that the waiver here by stipulation

was knowing and voluntary.  The judge found:

> "Attorney Clifford testified that on each day of hearing,
> he met with the defendant both prior to the hearing and
> subsequent thereto and also visited the defendant on
> several occasions at the Worcester County Jail.  Attorney
> Clifford also agreed that he accepted the finding of
> competency on behalf of the defendant as expressed in the
> forensic report of Dr. Schonberger and further that
> Attorney Clifford stipulated as to the content of the
> notice of violation that is on behalf of the defendant,
> Attorney Clifford stipulated to the probation violation.
> In this regard Attorney Clifford went through his normal
> and customary practice, that is, he would have met
> extensively with the defendant, gone through each and every
> allegation as contained in the notice of violation and then
> would have discussed whatever defenses the defendant had to
> the violations.  Attorney Clifford understood that there
> were difficulties with this defendant in terms of his
> ability to understand information and Attorney Clifford
> testified that it would be his practice to take as much
> time as was needed to assure himself that the defendant
> understood the information that was being provided."

The defendant, however, testified before the motion judge that

while Attorney Clifford "tried to explain" what would be

happening in the revocation proceeding, "I don't recall me

---

[9] The defendant contends on appeal that the motion judge
erred in allowing the Commonwealth's "Motion for Court Order
Declaring Defendant's Attorney-Client Privilege Waived."  We
disagree.  The defendant's motion for release criticized
Attorney Clifford's conduct in stipulating to the probation
violations, implicitly suggesting that he had communicated to
his attorney his desire to contest the allegations and
explicitly stating that counsel had entered the stipulation
without his consent.  Under these circumstances, the privilege
as to confidential communications was waived.  See, e.g.,
Commonwealth v. Garvin, 456 Mass. 778, 784-787 (2010);
Commonwealth v. Woodberry, 26 Mass. App. Ct. 636, 637-640
(1988).

saying, okay, fine.  Like I said, again, if you say something to me, two minutes later or three minutes later, I will forget the whole thing."

Given the defendant's difficulty processing information, Attorney Clifford's testimony about his conversations before and after the stipulation is not sufficient to show the defendant's understanding at the time of the stipulation.  His testimony -- credited by the motion judge -- that, although he did not have a specific memory of the conversations he had with the defendant, he would have contested any of the allegations had the defendant sought to do so and that he carefully reviewed the individual allegations and procedures to challenge them with the defendant beforehand -- is similarly insufficient.[10]

While the motion judge was able to take some measure of the defendant, who testified at the hearing, the defendant's testimony does not undermine his contention that he did not knowingly and voluntarily agree to waive the hearing on violations.  The judge found:

---

[10] At the hearing, Attorney Clifford testified that he stipulated to probation because as a strategic matter, where it was clear that the judge was seeking to devise a placement plan for the defendant that would include alternatives to incarceration, and where at least one of the numerous alleged violations was meritorious, a stipulation would put his client in a compassionate light.  While that may have been wise as a strategic matter, its wisdom does not resolve whether the waiver was knowing and voluntary.

> "The defendant testified that he has a second or third grade education level and that he does become confused about certain things.  The defendant confirmed, however, that he understood that Attorney Peter Clifford was his lawyer and that Attorney Clifford met with him in court and also went to the jail to visit him a number of times in addition to the meetings at court."

The fact that the defendant understood his relationship with his lawyer, however, does not resolve the question of waiver.  The motion judge did not make any findings with respect to the defendant's testimony at the hearing that he did not recall agreeing to waive a hearing or that he had difficulty retaining information.  Indeed, in July, 2008, not long after the June 3, 2008, probation violation determination, the defendant sent Attorney Clifford a handwritten letter which states:  "Is all of the things being done to me legal? . . .  When are you going to challenge all of the things that the state and the place that I was living has done to me?"  Attorney Clifford testified that he "assume[d]" that he had discussed with the defendant whether "he wanted to rescind or take back the stipulation that had been entered into and have a hearing on the merits."  He would have put on the record at the time of the August 14, 2008, sentencing that the defendant "now has reservations about stipulating to the violations."  Even though the motion judge credited Attorney Clifford's assessment of his own general practice and concluded that the defendant must not have been concerned with the waiver, we cannot read so much from the absence of the expression of

such a concern at the August 14 hearing.  If anything, the defendant's July, 2008, letter supports his claims at the motion hearing that he had concerns with his waiver and did not understand the stipulation.

To be sure, the assessment whether this intellectually disabled defendant had knowingly and voluntarily waived his right to a revocation hearing would have been facilitated if the court had inquired of him personally.  In Correa-Torres, 326 F.3d at 24, where the defendant was not mentally impaired, the First Circuit noted that, had the record demonstrated that "the court advised the appellant of his rights or that counsel reviewed those rights with him," it could have concluded as a matter of appellate review that the defendant's waiver was knowing and voluntary.  Here, while the record supports a determination that Attorney Clifford reviewed those rights with the defendant, given the defendant's mental impairment and the evidence of his lack of understanding of the ramification of the stipulation, we cannot conclude, in the totality of the circumstances, that at the time of the revocation proceeding the defendant waived his rights knowingly and voluntarily.[11]

---

[11] Although on the record here the Commonwealth has not proved that the defendant knowingly and voluntarily waived a revocation hearing and stipulated to a violation, that does not mean that we have concluded that he is not competent to do so in any future circumstances.

        Finally, we note that the claim that a colloquy is required by due process before a judge accepts a waiver of a probation revocation hearing has been rejected not only by the First Circuit but by all the other Federal circuit courts that have considered it.  See, e.g., United States v. Pelensky, 129 F.3d 63, 68 (2d Cir. 1997); United States v. Manuel, 732 F.3d 283, 291 (3d Cir. 2013) ("rigid or specific collogu[y]" not required in parole revocation hearing); United States v. Farrell, 393 F.3d 498, 500 (4th Cir. 2005); United States v. Hodges, 460 F.3d 646, 652 (5th Cir. 2006) ("Although a thorough colloquy .. . may be the most precise means of evaluating the voluntariness of a waiver, the failure . . . to engage in a comprehensive colloquy is not of itself, fatal to the defendant's waiver"); United States v. LeBlanc, 175 F.3d 511, 515-516 (7th Cir. 1999); United States v. Taylor, 747 F.3d 516, 519 (8th Cir. 2014); United States v. Segal, 549 F.2d 1293, 1296 (9th Cir. 1977); United States v. Fay, 547 F.3d 1231, 1234 (10th Cir. 2008).  While, as this case shows, good arguments can be made that the "solemnizing" of a contemporaneous waiver protocol is desirable "in aid of sound judicial administration," Ciummei v. Commonwealth, 378 Mass. 504, 508-509 (1979), such rule-making falls within the ambit of the Supreme Judicial Court and outside the purview of this court.  See ibid.

Conclusion.  The order revoking probation is vacated, and the matter is remanded to the Superior Court for further proceedings consistent with this opinion.

So ordered.