NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-1413                                          Appeals Court


COMMONWEALTH  vs.  JAMES M. BOWEN.


No. 16-P-1413.

Norfolk.     October 4, 2017. - February 23, 2018.

Present:  Green, Hanlon, & Neyman, JJ.


Due Process of Law, Probation revocation, Hearing.  Practice,
     Criminal, Revocation of probation, Probation, Stipulation,
     Waiver, Assistance of counsel, Sentence, Waiver.  Waiver.


     Indictments found and returned in the Superior Court
Department on September 2, 1999.

     A proceeding for revocation of probation was heard by
Thomas A. Connors, J.; a motion to reconsider was considered by
Douglas Wilkins, J.; and a motion for a new hearing was heard by
Connors, J.


     Stacey Gross Marmor for the defendant.
     Tracey A. Cusick, Assistant District Attorney, for the
Commonwealth.


     NEYMAN, J.  In Commonwealth v. Sayyid, 86 Mass. App. Ct.

479 (2014), this court held that a defendant's agreement to

waive a probation violation hearing must be knowing and

voluntary.  Id. at 480, 489.  Here, we are asked to determine

whether a defendant's stipulation during a probation violation hearing to two alleged violations constituted a breach of due process within the meaning of Sayyid. We hold that the stipulation did not fall within the ambit of Sayyid, and we discern no due process violation. Accordingly, we affirm.

Background. 1. Convictions and alleged probation violations. In 2001, the defendant pleaded guilty in Superior Court to six counts of aggravated rape. He was sentenced to concurrent terms of eight to ten years in State prison on the first five counts, and a twelve-year sentence of probation to be served from and after the State prison sentences on the sixth count.[1] The defendant was released from custody in September, 2010, and began serving the twelve-year probation sentence.

In June, 2013, the defendant was issued a "Notice of Surrender and hearing(s) for alleged violation(s) of Probation" (notice of probation violation). He stipulated that he had violated the probation conditions, and his probation was

---

[1] The defendant has filed multiple motions for a new trial claiming, inter alia, that his guilty plea was not voluntary, was the product of coercion, and was the result of ineffective assistance of counsel. The defendant's first motion for a new trial was allowed; however, on appeal this court vacated the order and remanded the matter for further findings after an evidentiary hearing. Commonwealth v. Bowen, 63 Mass. App. Ct. 579 (2005). After a hearing on remand, the motion for a new trial was denied, and a panel of this court affirmed the denial. Commonwealth v. Bowen, 71 Mass. App. Ct. 1110 (2008). The defendant's second motion for new trial was denied without a hearing, and a panel of this court affirmed the denial. Commonwealth v. Bowen, 83 Mass. App. Ct. 1130 (2013).

extended for an additional year with modified conditions. In October, 2013, the defendant was issued another notice of probation violation. Following a probation violation hearing in December, 2013, the defendant was again found to have violated the probation conditions, but he was still not incarcerated. Instead, his probation was further extended to 2030 with added conditions. On April 16, 2014, a third notice of probation violation was issued and served upon the defendant while he was at the Superior Court for a matter relating to his probation. As the defendant was not present when his case was called, a warrant issued for his arrest.[2]

On May 29, 2014, the defendant was arrested in Florida as a fugitive from justice. At the time of his arrest he was neither wearing a global positioning system (GPS) monitoring device nor had permission to leave the Commonwealth, as the terms of his probation required. In June, 2014, a fourth notice of probation

---

[2] After serving the defendant with the notice in Superior Court, the defendant's probation officer observed the defendant leave the court before his case was called. She followed him outside, shouted his name, and continued to shout for him to stop, but the defendant quickened his pace and ignored her. The probation officer informed a Superior Court judge of the defendant's flight, and a warrant for his arrest was issued. The probation officer then informed a State police sergeant of the warrant. The sergeant drove to the defendant's residence and observed the defendant leave the residence and enter a motor vehicle parked in the driveway. The sergeant called to the defendant by name and informed him of the warrant for his arrest. The defendant ignored her orders to stop, drove past her, and fled at a high rate of speed. The sergeant was not able to stop the defendant.

violation issued, alleging eleven separate violations of probation conditions.[3]

2. <u>Final probation violation hearing</u>. A Superior Court judge (sentencing judge) held a two-day probation violation hearing in January, 2015. At the outset of the hearing, the sentencing judge held a sidebar discussion with the probation officer[4] and defense attorney to ascertain whether the matter was "resolvable." The probation officer stated that the guidelines called for a sentence of twelve to eighteen years in State prison. Defense counsel stated that at a prior appearance, a different Superior Court judge had suggested that a sentence of five to six years would be appropriate. Defense counsel also stated that the defendant would stipulate to having left the Commonwealth and removing the GPS monitoring device from his

---

[3] The June, 2014 notice alleged that the defendant had committed the following probation violations: leaving the Commonwealth without permission; failure to report to probation; failure to attend and complete a drug and alcohol program; failure to attend Alcoholics Anonymous meetings; failure to maintain the GPS monitoring requirement; failure to register as a sex offender; failure to comply with a sex offender evaluation and treatment; failure to pay the probation supervision fee; "failure to make extraordinary efforts to secure employment"; failure to provide cellular telephone numbers; and failure to abide by all laws and court orders.

[4] An assistant district attorney assisted the probation department at the probation violation hearing.

leg,[5] but that the other technical violations of probation were at issue. The sentencing judge replied, inter alia, that "the [d]efendant apparently wants to dispute all or many of the violations alleged." The sentencing judge further stated: "[W]hat [the prior judge] proposed as a potential [sentence] did make some sense. But if that's, that's a nonstarter, then you know, he's got a right to try the case." Defense counsel responded that the defendant was looking "for something less than five to six." In response, the sentencing judge stated as follows:

> "That's fine. Why don't you talk to him, I mean, I understand, he wants to dispute many or all of the charges and that's fine. We'll hear it and, you know, I'll hear it and determine if there's a[] preponderance of the evidence and if it's made, then what the appropriate disposition is."

Following a brief recess, the evidentiary portion of the hearing commenced.[6] The probation department called several witnesses who testified to the defendant's violations of

---

[5] Defense counsel stated, in relevant part, "[The defendant] left the state. . . [t]here's no question about it and he admits that, he stipulates that, he took the, he slid the GPS monitoring system off his leg." Defense counsel further sought to mitigate the seriousness of the violation by advising the sentencing judge that the defendant "panicked" due to various factors, including "[h]is father dying, [he] almost [got] divorced," that "[h]e has two autistic sons[,] and he just had a lot of stuff going on."

[6] The Commonwealth ultimately withdrew three of the alleged probation violations: failure to register as a sex offender, failure to pay the probation supervision fee, and failure to abide by all laws and court orders.

multiple probation conditions. The evidence included testimony from the State police trooper, assigned to the violent fugitive apprehension section, who apprehended the defendant in Florida, and the Canton police detective who flew to Florida to effectuate the defendant's return to Massachusetts.

The defendant testified at the hearing and contested some of the probation violation allegations. He did not dispute that he had left the Commonwealth and removed the GPS monitoring device. Indeed, he admitted that he had "yanked" the GPS monitoring device from his body and "threw it out the window" of his motor vehicle after leaving his residence, and that he had traveled to Florida. However, defense counsel attempted to minimize those violations by pointing to the defendant's desperation, based on his past lengthy incarceration and fear of returning to jail, and citing to a defense witness's testimony regarding the animosity displayed by the surrendering probation officer toward the defendant.

Following the hearing, the sentencing judge determined that the Commonwealth had sustained its burden of proving by a preponderance of the evidence that the defendant left the Commonwealth without permission, failed to maintain the GPS monitoring device, failed to follow through with the sex offender evaluation and treatment, failed to provide cellular telephone information, and failed to report to probation. The

sentencing judge concluded that the Commonwealth did not prove violations regarding the failure to attend Alcoholics Anonymous meetings, to complete a drug and alcohol program, and to use extraordinary efforts to find employment. The sentencing judge imposed a sentence of five to nine years in State prison.

The defendant filed a motion to reconsider, asking that a lower maximum on his sentence be imposed, consistent with the five- to-six year sentence that a prior Superior Court judge had purportedly suggested. The motion to reconsider was denied. In January, 2016, the defendant filed a motion requesting a "new probation revocation hearing" (motion for a new hearing), contending that the sentencing judge failed to ascertain whether the two factual stipulations made by the defendant were knowing and voluntary. The sentencing judge denied the motion. This appeal ensued.

Discussion. 1. Validity of stipulation to two alleged violations. Citing Sayyid, the defendant contends that he is entitled to a "new probation revocation hearing" because his stipulation to the removal of the GPS monitoring device and flight to Florida was not knowing and voluntary. In Sayyid, we held that "a defendant's agreement to waive a probation [violation] hearing -- such as by stipulating to violations -- must be knowing and voluntary and that such waiver can be assessed under the totality of the circumstances." Id. at 489.

There, we determined that the defendant's stipulation to multiple violations was not knowing and voluntary, where he was mentally impaired and there was other evidence in the record of his lack of understanding of the ramification of the stipulation.  Id. at 492.  For the following reasons, we conclude that Sayyid is inapplicable in the instant case.

Sayyid stands for the proposition that in a probation violation proceeding, "a stipulation to probation violations resulting in waiver of a hearing must be knowing and voluntary" (emphasis supplied).  Id. at 480.  Here, the defendant did not waive the hearing.  To the contrary, the sentencing judge held a two-day hearing at which the Commonwealth presented testimony from five witnesses and entered nine exhibits into evidence. Defense counsel cross-examined each witness and called two witnesses to testify on the defendant's behalf.[7]  In addition, the defendant testified, challenged the validity of various allegations, and contended in closing argument that the Commonwealth had not met its burden of proving certain allegations.  As the sentencing judge stated in denying the motion for a new hearing, "[T]he defendant proceeded to the

---

[7] At the hearing, the defendant's therapist testified that she diagnosed him as suffering from depression and "PTSD" -- posttraumatic stress disorder -- that presented in the form of fear of returning to jail.  Her testimony was offered to explain why the defendant had removed his GPS monitoring device and fled to Florida.

contested revocation hearing as he had opted; [and] evidence embodied in the two factual stipulations was presented to the court during the course of the hearing, which he was free to challenge, minimize, or contradict."

In short, unlike Sayyid, in which the defendant waived the hearing itself -- i.e., the process that was due to him -- the defendant here received all of the due process to which he was entitled.  See Commonwealth v. Durling, 407 Mass. 108, 111-114 (1990) (detailing the minimum requirements of due process at a probation violation hearing).  Where the defendant did not waive the hearing, Sayyid is inapposite.[8]

Of further note, the defendant's argument ignores the distinction between stipulating to waive a procedure that carries with it certain constitutional protections (e.g., waiving a probation violation hearing, waiving trial by jury, or waiving the right to counsel) and stipulating to a fact.  See Commonwealth v. Myers, 82 Mass. App. Ct. 172, 181-182 (2012).

---

[8] At oral argument, the defendant contended that his claim of a due process violation falls squarely within the holding in Sayyid.  However, he argued that, in the alternative, an expansion of Sayyid would be warranted.  We decline the defendant's invitation, and we note that our ruling in Sayyid does not preclude a judge from accepting a factual stipulation at a probation violation hearing without first conducting a colloquy or inquiry into whether the defendant agreed to the stipulation knowingly and voluntarily.  To the contrary, as detailed supra, Sayyid applies only to stipulations "resulting in waiver of a [probation violation] hearing."  Sayyid, 86 Mass. App. Ct. at 480.

The latter carries no constitutional implication.  Sayyid, by contrast, was concerned with the waiving of constitutional protections without some safeguard.

2.  Ineffective assistance of counsel.  The defendant also contends that defense counsel rendered ineffective assistance by erroneously advising him that if he stipulated to removing the GPS monitoring device and leaving the Commonwealth, the judge would sentence him to not more than five to six years in State prison.  This claim is unpersuasive.

To sustain a claim of ineffective assistance of counsel, the defendant must show that the behavior of counsel fell below that of an "ordinary fallible lawyer" and that such failing "likely deprived the defendant of an otherwise available, substantial ground of defence."  Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  See Commonwealth v. Millien, 474 Mass. 417, 432 (2016) (second prong of ineffective assistance test met if there is substantial risk of miscarriage of justice arising from counsel's failure).

The defendant did not raise the issue of ineffective assistance of counsel, or cite to legal authority supporting such an argument, in any posttrial motion.[9]  Instead, the

---

[9] In his motion for a new hearing the defendant contended, in part, that he had stipulated to two of the alleged probation violations because his counsel had advised him that the judge would "cap" his sentence at five to six years in State prison.

defendant raises this claim here on appeal, relying on the affidavits he had submitted in support of his motion for a new hearing. Claims for ineffective assistance of counsel are disfavored if they are raised for the first time on direct appeal. Commonwealth v. Zinser, 446 Mass. 807, 811 (2006). Such a claim "should only be brought on direct appeal when the factual basis of the claim appears indisputably on the trial record." Commonwealth v. Keon K., 70 Mass. App. Ct. 568, 573-574 (2007). This is not such a case.

We conclude that defense counsel's strategy at the probation violation hearing of explaining the reasons for the defendant's departure from the Commonwealth and the GPS violation was not an unreasonable decision. See Commonwealth v. Rondeau, 378 Mass. 408, 413 (1979) (courts will not "second guess" counsel's "arguably reasoned tactical or strategic judgments," but will require that counsel's judgments be "manifestly unreasonable" in order to find ineffective assistance of counsel) (quotations omitted). This is particularly so where the defendant did not argue below, or to this court, that he had any viable defense to those alleged violations. Such an argument would have been futile in view of

---

Thus, he argued, those stipulations "cannot be deemed to have been a knowing and intelligent waiver of his due process rights." He did not claim, however, that his counsel's conduct constituted ineffective assistance of counsel and did not cite legal authority relating thereto.

the overwhelming evidence introduced at the probation violation hearing.  Where the defendant offers no viable defense to the probation violations, he cannot demonstrate that the factual stipulations, even if prompted by reliance on allegedly unreasonable assurances of a sentence capped at five to six years in State prison, likely deprived him of an otherwise available, substantial ground of defense.

The defendant's argument further ignores that, as discussed supra, the sentencing judge conducted an extensive probation violation hearing.  Not only did the Commonwealth present strong and unchallenged evidence proving the violations, but also defense counsel tested the Commonwealth's witnesses and evidence on cross-examination and presented evidence attempting to mitigate the seriousness of the violations.  The defendant also testified and admitted to the very violations at issue.  For all of these reasons, the defendant's claim of ineffective assistance is unavailing.

3. Reference to restraining orders in sentencing.  The defendant argues that the sentencing judge impermissibly considered the existence of restraining orders in crafting the five- to nine-year State prison sentence.  As the defendant did not raise this claim before the judge at sentencing, in his motion for reconsideration, or in his motion for a new hearing, our review is limited to whether any alleged error created a

substantial risk of a miscarriage of justice.  See Commonwealth v. Lender, 66 Mass. App. Ct. 303, 307 (2006).

The sentencing judge's observation regarding entries on the defendant's board of probation record was not improper.  See ibid.  Viewed in context, the brief reference to the restraining orders was relevant to the sentencing judge's discretionary decision whether to revoke or modify the conditions of probation and did not serve as a basis for the sentence imposed.  See Commonwealth v. Herrera, 52 Mass. App. Ct. 294, 295 (2001).  We discern no error and are confident that the sentencing judge relied solely on legally acceptable criteria in fashioning the sentence imposed in this case.  Compare Commonwealth v. Johnson, 27 Mass. App. Ct. 746, 751-752 (1989).

Conclusion.  The order revoking probation and imposing the sentence and the orders denying the motions for reconsideration and for a new hearing are affirmed.

So ordered.