# United States Court of Appeals
## For the First Circuit

No. 01-1172

UNITED STATES OF AMERICA,

Appellee,

v.

JORGE L. CORREA-TORRES,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Héctor M. Laffitte, U.S. District Judge]

Before

Torruella, Selya and Lipez,

Circuit Judges.

Stephen J. Weymouth, by appointment of the court, for
appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, with whom
H.S. Garcia, United States Attorney, and Sonia I. Torres-Pabón,
Assistant United States Attorney (Chief, Criminal Division), were
on brief, for appellee.

April 9, 2003

**SELYA**, **Circuit Judge**. This appeal requires us to decide, for the first time, what requirements must be met when a probationer, parolee, or person on supervised release purposes to waive his right to a revocation hearing under Federal Rule of Criminal Procedure 32.1.[1] We conclude that the record must show, affirmatively or by fair implication, that any such waiver was knowingly and voluntarily made. Because the record in the instant case reflects no such showing, we vacate the appellant's sentence and remand for further proceedings consistent with this opinion (including an opportunity for the appellant to withdraw his attorney's concession that a sufficient factual basis existed to justify the revocation of his term of supervised release).

## I. BACKGROUND

On July 9, 1993, defendant-appellant Jorge L. Correa-Torres pleaded guilty to one count of possessing more than five kilograms of cocaine with intent to distribute and aiding and abetting in the commission of that offense. See 21 U.S.C. § 841(a)(1); 18 U.S.C. § 2. The district court sentenced him to eighty months in prison, to be followed by a five-year term of supervised release. The appellant was discharged from the federal

---

[1]While this appeal was pending, the Criminal Rules were revised. The section at issue here, formerly Fed. R. Crim. P. 32.1(a)(2) (2000), now appears, without any relevant modification, as Fed. R. Crim. P. 32.1(b)(2) (2003). For convenience, we refer throughout to the earlier edition (which was in force at the time of the appellant's revocation hearing).

penitentiary in 1998, and his term of supervised release commenced at that time.

Two years later — while the appellant was still under supervision — the Commonwealth of Puerto Rico charged him with beating and threatening his girlfriend and damaging her car. See 8 P.R. Laws Ann. §§ 632, 633. Although these charges were eventually dropped because the girlfriend refused to cooperate with the local authorities, the incident continued to dog the appellant: the terms of his supervised release prohibited him from committing any federal, state, or local crime, and the domestic abuse allegations, if proven, constituted a clear violation. See 18 U.S.C. § 3583(d). So long as the government could prove that the appellant committed the proscribed acts, the terms of his release would be violated even in the absence of an actual conviction. See United States v. Jolibois, 294 F.3d 1110, 1114 (9th Cir. 2002); see also USSG §7B1.1, cmt. (n.1).

The appellant's probation officer brought the underlying facts to the district court's attention and moved for an order requiring the appellant to show cause why his term of supervised release should not be revoked. The district court issued the show-cause order. That order, along with a notification of the appellant's procedural rights, was served upon the attorney who had represented the appellant at the original trial. Both documents

were written in English, and neither contained a Spanish translation.

At the revocation hearing, the appellant's counsel — the same lawyer upon whom the show-cause order had been served — informed the court that, based on his (counsel's) conversations with the appellant's girlfriend, the appellant would not contest the charge. The lawyer then asked the court to be as lenient as possible, emphasizing that the local court had dismissed the domestic violence complaint and that the appellant had an otherwise untarnished record during supervised release. The district court did not inquire of the appellant either as to his understanding of his rights or as to his guilt. In fact, the appellant did not speak at all throughout most of the proceeding, but, instead, relied upon a court-appointed interpreter to follow the ongoing dialogue.

The district court correctly explained that the absence of a conviction was beside the point; revocation of supervised release could be ordered as long as the appellant had committed a proscribed act. Relying upon the waiver — the fact that the appellant, through counsel, had declined to contest the probation officer's allegations — the court revoked the term of supervised release.

The court then proceeded to the imposition of sentence. Asked if he wished to say anything in mitigation of punishment, the

appellant stated cryptically: "I think that it is unfair because that was a problem with my former girlfriend." The court did not ask him to elaborate. The prosecutor then suggested a sentence at the nadir of the applicable guidelines range, see USSG §§4B1.2(a), 7B1.1(a), 7B1.4, surmising "that the defendant [apparently] has accepted the fact that he abused his girlfriend and threatened her, and also threatened to kill her, and damaged her vehicle." The court imposed the recommended two-year sentence and added a new three-year term of supervised release.

The appellant filed a pro se notice of appeal. We appointed counsel for him. The attorney who represents the appellant in this court is not the attorney who represented him below.

## II. APPELLATE JURISDICTION

The government challenges our jurisdiction in this matter. It points out that the district court's judgment was entered on November 27, 2000, but that the notice of appeal was not docketed until late December. On this basis, the government insists that the appellant failed to comply with Fed. R. App. P. 4(b)(1)(A), which requires a defendant in a criminal case to file a notice of appeal within ten days after the entry of judgment. See United States v. Podolsky, 158 F.3d 12, 14-15 (1st Cir. 1998); see also United States v. Morillo, 8 F.3d 864, 867 (1st Cir. 1993) (explaining that the time limits for taking appeals in criminal

-5-

cases are "mandatory and jurisdictional"). This argument lacks force.

By the time that the district court judgment was entered on the docket, the appellant was in custody. Under Fed. R. App. P. 4(c)(1), an inmate confined in a correctional institution may file a notice of appeal in a criminal case by depositing it in the institution's internal mail system on or before the last day for filing. The record indicates that the appellant deposited his notice of appeal in the prison's internal mail system on December 4, 2000.[2] That was less than ten days after the hearing.

That ends this aspect of the matter. Applying the "prison mailbox" rule, we hold that the appellant essayed a timely appeal. Accordingly, this court has jurisdiction to hear and determine it.

## III. ANALYSIS

Before us, the appellant advances only a single claim: that his waiver of rights was insufficiently informed (and, thus, impuissant). To address this claim, we must consider three discrete but related points. The first implicates the showing that must attend a waiver of Rule 32.1 rights. The second involves the validity of the waiver effected in this case. The third concerns the remedy associated with an invalid waiver.

---

[2]Although the proof on this point is circumstantial, the government does not contest the date of deposit.

## A. **Waivers of Rule 32.1 Rights**.

Although revocations of probation, parole, or supervised release are not considered part of a criminal prosecution, they nevertheless entail a loss of freedom and a deprivation of liberty. See Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973); Morrissey v. Brewer, 408 U.S. 471, 484 n.12 (1972). Fundamental fairness therefore requires that defendants facing such revocations should be afforded notice of the charges against them, an opportunity to confront their accusers, and a chance to present evidence to their own behoof. See Bearden v. Georgia, 461 U.S. 660, 669 & n.10 (1983). Federal Rule of Criminal Procedure 32.1 addresses this need.

When the revocation of a term of probation, parole, or supervised release hangs in the balance, the target is entitled to a panoply of procedural rights. These include:

> (A) written notice of the alleged violation; (B) disclosure of the evidence against the person; (C) an opportunity to appear and to present evidence in the person's own behalf; (D) the opportunity to question adverse witnesses; and (E) notice of the person's right to be represented by counsel.

Fed. R. Crim. P. 32.1(a)(2) (2000). These protections serve a variety of interests. Among other things, they safeguard the defendant's obvious stake in preserving his liberty. See, e.g., United States v. Stocks, 104 F.3d 308, 312 (9th Cir. 1997). They also serve the sovereign's more nuanced interest in ensuring that

-7-

important legal determinations are informed by an accurate account of verified facts.  See, e.g., Black v. Romano, 471 U.S. 606, 612 (1985); Morrissey, 408 U.S. at 484.

In our system of criminal justice, most rights can be waived.  See United States v. Teeter, 257 F.3d 14, 21 (1st Cir. 2001) (cataloguing examples).  The rights enumerated in Rule 32.1 are no exception.  As a general proposition, however, the waiver of virtually any right closely affecting individual liberty must be knowingly and voluntarily made.  See, e.g., Brady v. United States, 397 U.S. 742, 748 (1970) (discussing waiver of rights incident to guilty plea); Adams v. United States, 317 U.S. 269, 275 (1942) (discussing waiver of right to jury trial); Johnson v. Zerbst, 304 U.S. 458, 464 (1938) (discussing waiver of right to counsel); Teeter, 257 F.3d at 24 (discussing waiver of right to appeal). Because adherence to the processes prescribed by Rule 32.1 is instrumental to the fair and efficient operation of revocation proceedings, we hold that a waiver of the rights conferred thereunder cannot be effective unless that waiver is made both knowingly and voluntarily.  Accord United States v. LeBlanc, 175 F.3d 511, 515 (7th Cir. 1999); United States v. Pelensky, 129 F.3d 63, 68 n.9 (2d Cir. 1997); Stocks, 104 F.3d at 312.

Ideally, the district court, when confronted with an attempted waiver, will advise the probationer, parolee, or person on supervised release of both the rights afforded him by Rule 32.1

and the consequences of a relinquishment of those rights. Because we are mindful that revocation proceedings are more informal than criminal prosecutions, see Morrissey, 408 U.S. at 480; United States v. Jones, 299 F.3d 103, 110 (2d Cir. 2002); United States v. Miller, 797 F.2d 336, 340 (6th Cir. 1986), we do not prescribe any particular mantra. Instead, we emulate several of our sister circuits and hold that, notwithstanding the requirement that waivers of procedural rights with respect to revocation hearings must be knowing and voluntary, such waivers need not be accompanied either by any magic words or by a formal colloquy of the depth and intensity required under Federal Rule of Criminal Procedure 11 (governing guilty pleas in criminal cases). See LeBlanc, 175 F.3d at 515-16; Pelensky, 129 F.3d at 67-68 (collecting cases); United States v. Rapert, 813 F.2d 182, 184-85 (8th Cir. 1987); cf. United States v. Proctor, 166 F.3d 396, 401 & n.5 (1st Cir. 1999) (noting that waivers of some rights must be scrutinized more closely than others).

This protocol has real significance for purposes of appellate review. Where, as here, a probationer, parolee, or person on supervised release mounts a retrospective challenge to the validity of a waiver of Rule 32.1 rights, a reviewing court should look not only to the punctilio of the sentencing court's colloquy with the probationer, parolee, or person on supervised release, but also to the totality of the attendant circumstances.

See LeBlanc, 175 F.3d at 517; United States v. Green, 168 F. Supp. 2d 383, 385 (E.D. Pa. 2001); cf. United States v. Woodard, 291 F.3d 95, 109 (1st Cir. 2002) (applying this mode of examination to waivers of the right to counsel); Smart v. Gillette Co. Long-Term Disab. Plan, 70 F.3d 173, 181 (1st Cir. 1995) (applying this mode of examination to waivers of employment rights).

The totality of the circumstances means exactly that — all the circumstances should be considered. Still, some circumstances are likely to have particular relevance in the revocation hearing context. These include evidence that sheds light upon the target's comprehension of the charges against him and evidence as to his appreciation of the nature of the rights afforded him by Rule 32.1. In the final analysis, however, courts should beware of assigning talismanic significance to any single fact or circumstance. The question of waiver entails endless permutations, and each case is quite likely to be sui generis.

## B. **The Instant Waiver**.

Against this backdrop, we turn to the proceedings in this case. We find no evidentiary support for the government's ipse dixit that the appellant understood either his rights or the significance of his waiver.

We begin this phase of our discussion by observing that the district court never made a specific finding that the

appellant's waiver was knowing and voluntary.[3]  While such an express finding is not ordinarily required in connection with a waiver of rights, see United States v. Segal, 549 F.2d 1293, 1300-01 (9th Cir. 1977), it is infinitely more difficult to find a valid waiver based on a silent record.  Cf. Boykin v. Alabama, 395 U.S. 238, 243 (1969) (refusing to draw such an inference in the guilty plea context).

Apart from the absence of a specific finding, nothing in the record adequately evinces that the appellant understood the nature of the accusation that triggered the revocation proceeding. The charges lodged against him in the Puerto Rico courts were dismissed, and the facts underlying those charges were never clearly set forth in the federal court proceedings.  The exchanges between the court and defense counsel at the revocation hearing itself did little to clarify matters, nor did they establish with any precision the appellant's version of the underlying events. The appellant said very little over the course of the hearing, and what little he did say, quoted supra, suggests a belief that he may not have committed a crime at all.  At the very least, his cryptic comment may have indicated a failure to appreciate the nature of the charges lodged against him.  See, e.g., LeBlanc, 175 F.3d at 515-17 (finding that a "confused colloquy with the court" evidenced

_____

[3]Given the fact that we announce a new rule, we do not intend any criticism of the able district judge.

the defendant's failure to comprehend the charges). We do not know because that comment was left unexplored.

By like token, there is no reason to believe that the appellant knew his rights. After all, the record does not reflect either that the court advised the appellant of his rights or that counsel reviewed those rights with him.[4] One cannot knowingly waive rights if one does not realize that they exist. In the circumstances of this case, an affirmative showing that someone had advised the appellant of his Rule 32.1 rights and explained the effect of a decision not to exercise those rights would seem to be a necessary concomitant to finding a knowing waiver.

This is a critical point. It not only goes to whether the appellant knew that he could put the government to its proof (i.e., require meaningful disclosure of the evidence against him and the opportunity to cross-examine the government's witnesses) but also to whether he knew that he was entitled to offer evidence in his own behalf (including evidence in mitigation). Presentation of mitigation evidence is "[a] further and equally important step [] necessary to determine whether such a violation warrants revocation and, if so, what sentence shall be imposed." United

---

[4]To be sure, the show-cause order was accompanied by a notice of rights — but those papers were served not on the appellant but on his counsel. The record is devoid of any evidence that the lawyer reviewed the "notice of rights" document with the appellant. Moreover, the document was in English — a language in which the appellant is not conversant.

-12-

States v. Diaz-Burgos, 601 F.2d 983, 985 (9th Cir. 1979) (per curiam). Given the unsettled state of the predicate facts, a simple allocution by an untutored defendant hardly seems an adequate surrogate for this right. See United States v. Dodson, 25 F.3d 385, 388-90 (6th Cir. 1994) (observing that "the unskilled or uneducated probationer or parolee may well have difficulty in presenting his version of a disputed set of facts").

Last — but far from least — the stakes often reflect upon whether a waiver can be deemed knowing and voluntary. See Town of Newton v. Rumery, 480 U.S. 386, 394 (1987) (considering the gain from a waiver in determining whether it was knowing and voluntary); Melanson v. Browning-Ferris Indus., Inc., 281 F.3d 272, 278 (1st Cir. 2002) (same). In this instance, the appellant had much to gain and little to lose by reserving his Rule 32.1 rights instead of waiving them. On the one hand, had he exercised his rights, the appellant might have successfully refuted the allegations against him, or, in the alternative, might have adduced evidence tending to mitigate the severity of the asserted violation. See Gagnon, 411 U.S. at 786-87; Diaz-Burgos, 601 F.2d at 985-86. Either way, he might have prevented (or, at least, minimized) the loss of his liberty. Waiving his rights, on the other hand, yielded him no discernible benefit.

To sum up, we recognize that courts generally give defendants the opportunity to waive various of their rights in

-13-

order to expedite criminal proceedings and bring finality to them. Waivers are not, however, intended "to leave acquiescent defendants totally exposed to future vagaries (however harsh, unfair, or unforeseeable)." Teeter, 257 F.3d at 25. In this case, there is simply no evidence to show that the appellant knowingly and voluntarily placed himself at risk of such vagaries.[5] His waiver was, therefore, ineffectual.

## C. Remedy.

We briefly discuss the question of remedy. When a term of probation, parole, or supervised release is revoked following an invalid waiver of Rule 32.1 rights, the preferred practice is to vacate the ensuing sentence and start the proceeding afresh. See LeBlanc, 175 F.3d at 518; see also Dodson, 25 F.3d at 390 (vacating post-revocation sentence when probationer was prohibited from testifying on his own behalf). This accords with the praxis typically followed in the wake of a Rule 11 violation. See, e.g., United States v. Abbott, 241 F.3d 29, 37 (1st Cir. 2001); United States v. Hernandez-Wilson, 186 F.3d 1, 6-7 (1st Cir. 1999); but cf. United States v. Giron-Reyes, 234 F.3d 78, 83 (1st Cir. 2000)

---

[5]Subsequent to oral argument in this case, we received an informative motion from the government that transmitted a letter over the signature of the appellant's trial counsel purporting to recount his version of events leading up to the waiver. We deem that submission improper and therefore disregard it. See United States v. Kobrosky, 711 F.2d 449, 457 (1st Cir. 1983) ("We are an appellate tribunal, not a nisi prius court; evidentiary matters not first presented to the district court are, as the greenest of counsel should know, not properly before us.").

(vacating sentence but allowing lower court to reinstate it if a "meaningful retrospective hearing" could determine that defendant's guilty plea was competent).

In this case, we see no reason to deviate from the norm. Thus, we direct the vacatur of the appellant's sentence. On remand, the district court should allow the appellant, if he so elects, to withdraw his prior stipulation and contest the stated basis for revocation of supervised release. The court shall then undertake further proceedings consistent with this opinion.

## IV. CONCLUSION

We need go no further. We adopt today a rule to the effect that, if a person facing a proceeding for revocation of probation, parole, or supervised release purposes to waive his rights under Federal Rule of Criminal Procedure 32.1, the district court has an obligation to ensure that the waiver is made knowingly and voluntarily. The waiver here fails to satisfy that criterion. Consequently, we sustain the defendant's appeal, vacate his sentence, and remand for further proceedings consistent with this opinion.

**Vacated and remanded**.