STATE OF MINNESOTA

IN SUPREME COURT

A12-2192

Court of Appeals                                                        Dietzen, J.
                                        Dissenting, Lillehaug, Page, and Wright, JJ.

State of Minnesota,

                  Respondent,

vs.                                                          Filed:  February 4, 2015
                                                        Office of Appellate Courts

Clarence Bruce Beaulieu,

                  Appellant.

_____

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Gregory A. Widseth, Polk County Attorney, Andrew W. Johnson, Assistant Polk County Attorney, Crookston, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

1.      A probationer does not have a constitutional right "to be advised" that he or she has the procedural due process rights articulated in *Morrissey v. Brewer*, 408 U.S. 471 (1972).

2.      The failure to provide appellant with the rights advisory set forth in Minn. R. Crim. P. 27.04 did not affect his substantial rights.

Affirmed.

1

DIETZEN, Justice.

Appellant Clarence Bruce Beaulieu pleaded guilty and was convicted of first-degree burglary. The district court imposed a 57-month sentence, which was stayed, and Beaulieu was placed on probation. Two years later, Beaulieu appeared before the district court regarding alleged probation violations. After Beaulieu personally admitted the probation violations, the court revoked Beaulieu's probation. On appeal, Beaulieu argued for the first time that the district court committed reversible error when it violated a claimed constitutional right "to be advised" of his due process rights under *Morrissey v. Brewer*, 408 U.S. 471, 488-89 (1972), and when it failed to provide him the rights advisory required by Minn. R. Crim. P. 27.04. Because we conclude that Beaulieu's arguments lack merit, we affirm.

In May 2010, the State charged Beaulieu with first-degree burglary, Minn. Stat. § 609.582, subd. 1(c) (2014), alleging that he entered the apartment of his ex-girlfriend and assaulted her. Pursuant to a plea agreement, Beaulieu pleaded guilty to first-degree burglary. In accordance with the plea agreement, the district court stayed execution of a 57-month sentence and placed Beaulieu on probation for 20 years. Beaulieu's sentence reflected a downward dispositional departure. As conditions of his probation, Beaulieu was required to fully cooperate with his probation agent and complete periodic chemical dependency assessments.

In September 2010, Beaulieu's probation agent filed a probation-violation report alleging that Beaulieu had failed to keep necessary appointments and comply with the

conditions of his probation. At the first-appearance hearing, the district court asked Beaulieu's counsel: "[H]ave you had a chance . . . to go through that claimed probation violation with [Beaulieu]?" Beaulieu's counsel responded that he had, and that his client intended to admit the violation. The court asked Beaulieu if he admitted the probation violation. Beaulieu answered: "Admit it, your Honor." At the disposition hearing, the court followed the recommendation of Beaulieu's probation agent and continued Beaulieu's probation.

Two years later, Beaulieu's probation officer filed a second probation-violation report. The report alleged that Beaulieu failed to "keep all appointments, be truthful, and comply with all instructions of the probation agent," and failed to "show proof of completing a chemical dependency assessment." At the first-appearance hearing, Beaulieu's counsel informed the court that he had reviewed the allegations with Beaulieu. Counsel then made a request for an admit/deny hearing, which the court granted.[1] At the admit/deny hearing, Beaulieu's counsel stated: "Your Honor, [Beaulieu would] admit the allegations." When asked if he admitted the alleged probation violations, Beaulieu responded: "Yes, I do, your Honor." The court accepted the admissions and scheduled a disposition hearing. At the disposition hearing, the court revoked Beaulieu's probation and executed his 57-month sentence.

---

[1] Although Minn. R. Crim. P. 27.04 does not contain the phrase "admit/deny hearing," the court of appeals used the phrase in *State v. Narvaez* to describe a hearing that occurs between a first-appearance hearing and a contested-revocation hearing. No. A13-0511, 2013 WL 6569943, at *1 (Minn. App. Dec. 16, 2013).

3

The district court failed to provide Beaulieu with the rights advisory required by Minn. R. Crim. P. 27.04, which informs a probationer of his or her right to:

a. a lawyer, including an appointed lawyer if the probationer cannot afford a lawyer;

b. a revocation hearing to determine whether clear and convincing evidence of a probation violation exists and whether probation should be revoked;

c. disclosure of all evidence used to support revocation and of official records relevant to revocation;

d. present evidence, subpoena witnesses, and call and cross-examine witnesses, except the court may prohibit the probationer from confrontation if the court believes a substantial likelihood of serious harm to others exists;

e. present mitigating evidence or other reasons why the violation, if proved, should not result in revocation;

f. appeal any decision to revoke probation.

Minn. R. Crim. P. 27.04, subd. 2(1)(c). The rights set forth in Rule 27.04, subdivision 2, reflect the rights articulated in *Morrissey v. Brewer*, 408 U.S. 471, 488-89 (1972), and its progeny. In *Morrissey*, the Court explained that in the context of a parole revocation, that certain minimum requirements of due process were required. 408 U.S. at 484. Unlike the rule governing the waiver of counsel, Minn. R. Crim. P. 5.04, subd. 1, and the rule governing the waiver of a jury trial, Minn. R. Crim. P. 26.01, subd. 1(2), Rule 27.04 does not require a defendant to personally waive his or her *Morrissey* rights in writing or on the record in open court.

Before the court of appeals, Beaulieu argued for the first time that the district court violated an alleged constitutional right "to be advised" of his *Morrissey* due process

4

rights prior to accepting his admission of the probation violations, and that he did not knowingly and intelligently waive his *Morrissey* rights. The court rejected both arguments, concluding in part that under the circumstances of Beaulieu's case, one could assume he "was adequately informed of his rights because he was represented by counsel." *State v. Beaulieu*, No. A12-2192, 2013 WL 4779046, at *4 (Minn. App. Sept. 9, 2013) (citing *State v. Lorentz*, 276 N.W.2d 37, 38 (Minn. 1979) (explaining that a presumption arose that the defendants had been fully advised of their rights when the record revealed that both defendants had discussed their cases with their respective attorneys)). Consequently, the court affirmed the district court's revocation of Beaulieu's probation.

On appeal, Beaulieu argues that (1) the district court erred by violating an alleged constitutional right "to be advised" of his due process rights under *Morrissey*, 408 U.S. at 488-89; and (2) the district court erred when it failed to provide him the rights advisory required by Minn. R. Crim. P. 27.04.[2] We address each issue in turn.

I.

We first consider Beaulieu's argument that his probation revocation must be reversed because the district court violated a claimed constitutional right "to be advised"

---

[2] In his brief, Beaulieu fails to acknowledge the distinction between the procedural requirements of Minn. R. Crim. P. 27.04 and the procedural due process requirements of the state and federal constitutions. *Cf. State v. Everett*, 472 N.W.2d 864, 867 n.2 (Minn. 1991) (noting the distinction between a violation of a court rule and a violation of the federal constitution). Because the distinction between a rule violation and a constitutional violation is important, we separately discuss the alleged violations.

of the due process rights articulated in *Morrissey*, 408 U.S. at 488-89. Because Beaulieu did not assert the alleged constitutional right in the district court, we must address the threshold issue of whether the common law forfeiture doctrine precludes the requested relief.[3]

"[A] constitutional right, or a right of any other sort, may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *United States v. Olano*, 507 U.S. 725, 731 (1993) (citation omitted) (internal quotation marks omitted); *see also State v. Williams*, 794 N.W.2d 867, 874 (Minn. 2011) (explaining that "[w]e ordinarily do not consider issues raised for the first time on appeal, even when those issues are constitutional questions of criminal procedure or are challenges to the constitutionality of a statute"); *State v. Goodloe*, 718 N.W.2d 413, 422 n.6 (Minn. 2006) (explaining that the term "forfeiture" most accurately described the effect of failing to bring an alleged error to the attention of the district court). The forfeiture doctrine reflects the "need to encourage all trial participants to seek a fair and accurate trial the first time around." *United States v. Young*, 470 U.S. 1, 15 (1985); *accord State v. Ramey*, 721 N.W.2d 294, 299 (Minn.

---

[3]    We have sometimes used the phrase "waived . . . appellate review" when discussing a defendant's failure to object to an error in the district court. *See, e.g.*, *Montanaro v. State*, 802 N.W.2d 726, 732 (Minn. 2011). But the United States Supreme Court has drawn a distinction between forfeiture and waiver, explaining that "[w]hereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (citation omitted) (internal quotation marks omitted) (quoted in *State v. Jeffries*, 806 N.W.2d 56, 64 n.4 (Minn. 2011)). We therefore use the word "forfeiture" when describing a failure to make a timely assertion of a right.

2006). Put differently, the forfeiture doctrine "encourages defendants to object while in the [district] court so that any errors can be corrected before their full impact is realized." *State v. Pearson*, 775 N.W.2d 155, 161 (Minn. 2009). But because "[a] rigid and undeviating judicial[]" application of the forfeiture rule "would be out of harmony with . . . the rules of fundamental justice," state and federal rules of criminal procedure provide appellate courts "a limited power to correct errors that were forfeited because not timely raised in district court." *Olano*, 507 U.S. at 731-32 (citation omitted) (internal quotation marks omitted).

Minnesota Rule of Criminal Procedure 31.02 provides that a "[p]lain error affecting a substantial right can be considered by the court on motion for new trial, post-trial motion, or on appeal even if it was not brought to the trial court's attention." Rule 31.02 is based on Fed. R. Crim. P. 52(b), which reads: "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."[4] The limited power provided by the state and federal rules is known as the "plain-error doctrine." *Young*, 470 U.S. at 15; *accord Ramey*, 721 N.W.2d at 297-98.

The plain-error doctrine "tempers the blow of a rigid application of the contemporaneous-objection requirement" through a "careful balancing of [the] need to encourage all trial participants to seek a fair and accurate trial the first time around against [the] insistence that obvious injustices be promptly redressed." *Young*, 470 U.S. at 15 (citation omitted) (internal quotation marks omitted); *accord Ramey*, 721 N.W.2d at

---

[4] *See* Minn. R. Crim. P. 31 cmt.—1990 ("Rule 31.02 (Plain Error) comes from Fed. R. Crim. P. 52(b)").

299. As part of that careful balance, the plain-error doctrine requires a defendant to establish (1) an error, (2) that is plain, and (3) that affects the defendant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998) (citing *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)). If the defendant satisfies the first three prongs of the plain-error test, "we may correct the error only if it 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *State v. Crowsbreast*, 629 N.W.2d 433, 437 (Minn. 2001) (quoting *Johnson*, 520 U.S. at 467) (alteration in original); *accord State v. Bahtuoh*, 840 N.W.2d 804, 811 (Minn. 2013).

To satisfy the first prong of the plain-error doctrine, Beaulieu must establish: (1) a probationer has a constitutional right "to be advised" of the due process rights articulated in *Morrissey*, and (2) the district court violated that right in his case. We begin by considering the issue of whether a probationer has a constitutional right "to be advised" of the due process rights articulated in *Morrissey*.

Both the United States and Minnesota Constitutions afford criminal defendants due process of law. U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 7. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *State v. Krause*, 817 N.W.2d 136, 145 (Minn. 2012) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Whether a defendant has been denied due process of law is a question of law that we review de novo. *Rew v. Bergstrom*, 845 N.W.2d 764, 785 (Minn. 2014).

In *Morrissey*, the Supreme Court held that a parolee, faced with parole revocation and a loss of liberty, is entitled to procedural due process. 408 U.S. at 482. The Court

acknowledged that parole revocation is not part of a criminal prosecution and thus the "full panoply of rights due a defendant in such a proceeding does not apply." *Id.* at 480. Nevertheless, it concluded that in the context of a parole revocation, the minimum requirements of due process included:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489. The Court extended the *Morrissey* procedural due process rights to probation revocations in *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). The Court reasoned that "[p]robation revocation, like parole revocation . . . result[s] in a loss of liberty." *Id.* Therefore, a probationer "is entitled to a preliminary and a final revocation hearing, under the conditions specified in *Morrissey*." *Id.*

Pursuant to *Morrissey* and *Gagnon*, a probationer is entitled to procedural due process prior to the revocation of probation. But there is nothing in *Morrissey* or *Gagnon* to suggest that a probationer has a separate constitutional right *to be advised* of the due process rights articulated in *Morrissey*. Beaulieu contends that such a right can be found in *United States v. Correa-Torres*, 326 F.3d 18, 25 (1st Cir. 2003), and *United States v. LeBlanc*, 175 F.3d 511, 515 (7th Cir. 1999). But the issue in *Correa-Torres* and *LeBlanc* was not whether a probationer had a separate due process right "to be advised" of the due process rights articulated in *Morrissey*. Instead, the issue was whether a probationer's

9

waiver of the *Morrissey* due process rights had to be knowing and voluntary. 326 F.3d at 25; 175 F.3d at 515.

We conclude that a probationer does not have a separate constitutional right "to be advised" that he or she has the procedural due process rights articulated in *Morrissey*. Because Beaulieu has failed to establish a separate constitutional right "to be advised" of the due process rights articulated in *Morrissey*, he has not satisfied the "error" requirement of the plain-error doctrine, and therefore the common law forfeiture doctrine precludes the requested relief—a reversal of his probation revocation.

## II.

Second, Beaulieu argues that his probation revocation must be reversed because the district court erred by failing to provide him with the rights advisory required by Minn. R. Crim. P. 27.04. Because defense counsel did not object to the court's failure to comply with Rule 27.04, and the error falls within the category of an alleged trial error, we must determine whether the plain-error doctrine allows us to remedy this otherwise forfeited error. *See State v. Kuhlmann*, 806 N.W.2d 844, 852-53 (Minn. 2011).

Rule 27.04 requires a district court to inform a probationer of his right to:

a. a lawyer, including an appointed lawyer if the probationer cannot afford a lawyer;

b. a revocation hearing to determine whether clear and convincing evidence of a probation violation exists and whether probation should be revoked;

c. disclosure of all evidence used to support revocation and of official records relevant to revocation;

10

d. present evidence, subpoena witnesses, and call and cross-examine witnesses, except the court may prohibit the probationer from confrontation if the court believes a substantial likelihood of serious harm to others exists;

e. present mitigating evidence or other reasons why the violation, if proved, should not result in revocation;

f. appeal any decision to revoke probation.

Minn. R. Crim. P. 27.04, subd. 2(1)(c).

We have not previously applied the plain-error doctrine to a defendant's claim that the court failed to provide him with the rights advisory required by Minn. R. Crim. P. 27.04. We have, however, recently applied the doctrine to a claim that the court failed to obtain the defendant's personal waiver of his right to a jury trial, as required by Minn. R. Crim. P. 26.01, subd. 1(2). *Kuhlmann*, 806 N.W.2d at 852-53. In *Kuhlmann*, we explained that the alleged error should be reviewed for plain error because the "trial court's failure to obtain a personal waiver in this case falls into the category of 'trial errors' occurring in the prosecution of the case, rather than a defect in the constitution of the trial mechanism." *Id.* at 852. The district court's failure to provide Beaulieu the Rule 27.04 rights advisory falls into the same category as the error in *Kuhlmann.* Put differently, it is the type of nonstructural error that the district court could have corrected had it been brought to the court's attention, and therefore Beaulieu has forfeited appellate

11

review of his Rule 27.04 claim unless he can satisfy the requirements of the plain-error doctrine.[5]

We conclude that Beaulieu has established the first two prongs of the plain-error doctrine. The district court's failure to provide Beaulieu with the rights advisory mandated by Minn. R. Crim. P. 27.04 was an error that was plain because it contravened an unambiguous rule of criminal procedure. Nevertheless, we conclude that Beaulieu has not met his heavy burden of showing the error affected his substantial rights. Beaulieu has not alleged, much less offered any evidence, that he lacked actual knowledge of the rights set forth in Rule 27.04, nor that he would have denied the probation violations had the court read him the Rule 27.04 rights advisory.[6] Because Beaulieu has failed to meet

---

[5]     We acknowledge that in *State v. Osborne*, we concluded the defendant had not forfeited appellate review of a claim that the district court failed to provide him with a *Blakely* trial, even though the defendant failed to raise the claim in the district court. 715 N.W.2d 436, 441-42 (Minn. 2006). But *Osborne* is procedurally and factually distinguishable from Beaulieu's case. In *Osborne*, an intervening change in the law excused the defendant's failure to assert what would have otherwise been a futile objection in the district court. *Id*. at 442 (explaining that at the time of the defendant's sentencing, "our case law had consistently rejected any *Blakely*-type claim"). Put differently, the purpose underlying the general forfeiture rule—encouraging a defendant to object while in the district court so that any errors can be corrected before their full impact is realized—was not implicated in *Osborne* because asserting a futile *Blakely* objection would not have led to correction of the error.

[6]     The record in this case is distinguishable from *State v. Little*, 851 N.W.2d 878 (Minn. 2014), in three important respects. First, the record in *Little* contained a statement by defense counsel that indicated Little may not have had a full appreciation of what was happening in the days leading up to his trial because everything was moving at "laser light speed." *Id*. at 885. Second, Little told the probation officer who conducted his presentence investigation that he did not know about the added charge until after he was found guilty. *Id.* Third, the rule at issue in *Little* not only required the court to advise

(Footnote continued on next page.)

12

his heavy burden of showing the error was prejudicial and affected the outcome of the proceedings, we conclude the district court's plain error in failing to provide Beaulieu the rights advisory required by Minn. R. Crim. P. 27.04 did not affect his substantial rights.[7]

Affirmed.

---

(Footnote continued from previous page.)
Little of his right to a jury trial, it also required the defendant's jury trial waiver to be made "personally, either in writing or on the record." *Id.* at 881.

[7] The dissent contends that Beaulieu's brief raises an additional issue—whether Beaulieu waived his *Morrissey* rights. To support that contention, the dissent relies on the court of appeals' opinion, the order granting review, the brief filed by Beaulieu in this court, and some of the questions asked during oral argument. With all due respect to the dissent, we conclude that the basis for Beaulieu's waiver claim throughout these proceedings is that the district court failed to advise Beaulieu of his *Morrissey* rights on the record. For example, Beaulieu's brief describes the issue presented as whether "the district court violated [his] due process rights by failing to inform him of his *Morrissey* rights prior to accepting his admission to the alleged probation violation." He then argues that the district court erred by violating an alleged constitutional right "to be advised" of his *Morrissey* due process rights and by failing to comply with Minn. R. Crim. P. 27.04. Following these arguments, Beaulieu states, "The next question is whether despite this failure, was there a valid waiver of these rights." Beaulieu contends the answer to this question is "no" because "he was never advised of his rights on the record." Yet that is the precise claim we reject above. Because Beaulieu's waiver claim is not *independent* of his "notice" argument, we need not separately address it.

D I S S E N T

LILLEHAUG, Justice (dissenting).

As the majority acknowledges, the district court "contravened an unambiguous rule of criminal procedure" when it failed to advise Clarence Bruce Beaulieu of his constitutional rights before it revoked his probation and executed his prison sentence. In the aftermath of this error, the parties presented and argued three issues: (1) whether Beaulieu had a constitutional right "to be advised" by the district court of his *Morrissey* due process rights; (2) whether the district court's plain error in failing to advise Beaulieu of his rights as required by Minn. R. Crim. P. 27.04 affected Beaulieu's substantial rights; and (3) whether Beaulieu knowingly and voluntarily waived his *Morrissey* due process rights. Inexplicably, the majority decides only the first and second issues. The majority evades the third issue—whether there was knowing and voluntary waiver—with a footnote at the end of the opinion to the effect that Beaulieu's brief did not assert an independent waiver claim.

I will demonstrate, in considerable detail, that the allegation that Beaulieu failed to describe clearly and press the waiver issue strays far from reality. The court of appeals squarely decided the issue. We granted review on that very issue. Beaulieu's brief argued it. The State responded on the merits. And, from the first minute of oral argument, the waiver issue took center stage and never left the spotlight.

D-1

The majority should have reached the waiver issue, decided it, reversed the court of appeals, and remanded the case to the district court to do what it should have done in the first place: follow our Rules of Criminal Procedure.[1]

I.

In 2010, Beaulieu pleaded guilty to one count of burglary in the first degree. He was sentenced to 57 months in prison. But the district court stayed execution of Beaulieu's sentence for 20 years and placed him on probation.

Two years later the State sought to revoke Beaulieu's probation. Minnesota Rule of Criminal Procedure 27.04 requires that, at a probationer's initial appearance, "the court must . . . [t]ell the probationer" of his or her constitutional rights, including the right to a probation revocation hearing in which the State would have the burden to prove the alleged probation violation by clear and convincing evidence. *Id.*, subd. 2(1). The court must also tell the probationer that, among other things, he or she has the right to see the State's evidence, present evidence, subpoena witnesses, cross-examine witnesses, and present reasons why the alleged violation should not result in revocation. *Id.*

---

[1]	Because I conclude that the record does not show a knowing and voluntary waiver of Beaulieu's *Morrissey* rights, I need not address the two issues the majority does reach: whether Beaulieu had a separate constitutional right "to be advised" by the district court of his right to a revocation hearing (Part I of the majority's opinion) or whether his probation revocation must be reversed solely because of the district court's plain error in failing to deliver the rights advisory required by Minn. R. Crim. P. 27.04 (Part II of the majority's opinion). The majority dismisses the subject of whether Beaulieu knowingly and voluntarily waived his *Morrissey* rights—what should have been Part III of the majority opinion—at the very end of the opinion, in footnote 7.

When Beaulieu made his first appearance, on August 10, 2012, the district court did not give the required advisory. When Beaulieu made his second appearance three days later to admit the violation, the district court did not give the required advisory. When Beaulieu made his third appearance and the district court revoked Beaulieu's probation and executed the 57-month sentence, the district court did not give the required advisory. As the majority agrees, this was error.

Not only did the district court fail to tell Beaulieu of his rights at any of the three hearings, it did not make any finding that Beaulieu had knowingly and voluntarily waived his constitutional rights. Neither the prosecutor, nor defense counsel, nor Beaulieu himself asserted that Beaulieu knew his rights and had decided to waive them.

Beaulieu appealed the revocation of his probation and execution of his sentence. In an unpublished opinion, the court of appeals affirmed. We granted review.

II.

The concept is hardly new that a probationer must understand his or her constitutional rights, and either exercise those rights or waive them knowingly and voluntarily before a loss of liberty. As the U.S. Supreme Court made clear in *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973), a probationer charged with a probation violation and at risk of a loss of liberty is entitled to procedural due process. The minimum requirements of procedural due process include preliminary and final revocation hearings. *Gagnon*, 411 U.S. at 782. The purpose of these hearings is to provide the parties an opportunity to present evidence on the issue of

whether there was a probation violation and whether any mitigating circumstances exist. *See Morrissey*, 408 U.S. at 487-88.

The importance of the constitutional right to procedural due process in probation revocation proceedings is demonstrated by the fact that, in the aftermath of *Morrissey* and *Gagnon*, we promulgated Minn. R. Crim. P. 27.04. Rule 27.04, subdivision 2(1), requires that the district court "[t]ell the probationer" of the probationer's rights to: (1) counsel; (2) a revocation hearing at which the State must present clear and convincing evidence of a probation violation; (3) pre-hearing discovery; (4) subpoena and cross-examine witnesses; (5) present evidence; and (6) appeal any decision to revoke probation. Further, the rule allows the probationer to "present mitigating evidence or other reasons why the violation, if proved, should not result in revocation." *Id.*

Of course, constitutional rights can be waived. "Waiver is the voluntary relinquishment of a known right." *State v. Jones,* 772 N.W.2d 496, 504 (Minn. 2009). "Whether a waiver of a constitutional right is valid depends 'upon the particular facts and circumstances surrounding that case . . . .' " *State v. Worthy*, 583 N.W.2d 270, 275-76 (Minn. 1998) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). It is black-letter law that "[t]here is a presumption against the waiver of constitutional rights." *Brookhart v. Janis*, 384 U.S. 1, 4 (1966); *see also Illinois v. Allen*, 397 U.S. 337, 343 (1970); *State v. Finnegan*, 784 N.W.2d 243, 247 (Minn. 2010) ("The right may be waived . . . . But the court must indulge every reasonable presumption against the loss of constitutional rights."). While the U.S. Supreme Court has not spoken on how *Morrissey* rights may be waived, the federal circuit courts have held that rights may be waived by fair implication.

*See, e.g.*, *United States v. Correa-Torres*, 326 F.3d 18, 23 (1st Cir. 2003) (no "particular mantra" or "magic words" are required for knowing and voluntary waivers of *Morrissey* rights).

III.

So, where is the evidence that overcomes the presumption that Beaulieu did not waive his constitutional rights? Which particular facts and circumstances show, by fair implication, that Beaulieu knew his rights and decided to relinquish them?

The record before us does not contain a single piece of direct or circumstantial evidence that Beaulieu knowingly and voluntarily waived his constitutional rights. We know that the district court did not tell Beaulieu of his rights, as it should have. We know that the prosecutor did nothing to secure a waiver. We know that defense counsel and Beaulieu said nothing on the record about his rights. The record fails to show anything that comes close to a waiver, much less one that was knowing and voluntary.

The circumstances here are remarkably similar to a case from the U.S. Court of Appeals for the First Circuit, *United States v. Correa-Torres*, 326 F.3d 18 (1st Cir. 2003). As here, the First Circuit considered whether a probationer had waived his right to a revocation hearing. *Id.* at 20. As here, the record did not reflect that the district court, the prosecutor, or the probationer's counsel had advised the probationer of his rights. *Id.* at 24. As here, the record was silent on the probationer's waiver. *Id.* at 23-24. As here, the district court did not make a specific finding regarding the probationer's waiver. *Id.* As here, the exchanges between the district court and probationer's counsel did little to clarify matters. *Id.* at 24.

D-5

As I conclude here, the First Circuit concluded that there was no evidence to show that the probationer had knowingly and voluntarily waived his rights. *Id.* at 23. The record failed to show that "someone had advised the [probationer] of his [procedural] rights" or "explained the effect of a decision not to exercise those rights." *Id.* at 24. After all, "[o]ne cannot knowingly waive rights if one does not realize that they exist." *Id.*

As in *Correa-Torres*, we simply do not know what, if anything, Beaulieu knew about his constitutional rights. As in *Correa-Torres*, the particular facts and circumstances do not show, affirmatively or even by fair implication, that Beaulieu waived his rights knowingly and voluntarily.

IV.

The court of appeals attempted to fill the factual void with a presumption: that because Beaulieu was represented by counsel, "the district court may assume that appellant was adequately informed of his rights" and must have waived them. *State v. Beaulieu*, No. A12-2192, 2013 WL 4779046, at *4 (Minn. App. Sept. 9, 2013).

In this case, that is hardly a safe presumption. At Beaulieu's first appearance, his counsel said: "I have reviewed with him the allegations in the Petition." But this statement does not fairly imply that Beaulieu knew his rights. Read fairly, the statement suggests that Beaulieu's counsel reviewed with him the *factual basis* of the alleged probation violations—i.e., that Beaulieu failed to keep appointments, be truthful, comply with instructions, and complete a chemical dependency assessment. That is not enough

to support a reasonable inference that Beaulieu's counsel fully advised him of his constitutional rights and he then silently, but knowingly and voluntarily, waived them.

Granted, the court of appeals' reliance on the presumption that attorneys properly advise their clients of their rights finds some support in our case law. We have stated that it is appropriate to presume that an individual, represented by counsel, is informed of his or her procedural rights. *See, e.g.*, *State v. Lorentz*, 276 N.W.2d 37, 38 (Minn. 1979); *State v. Propotnik*, 299 Minn. 56, 57, 216 N.W.2d 637, 638 (1974). Once, in *Shackelford v. State*, 253 N.W.2d 149, 149-50 (Minn. 1977), we even applied this presumption in the guilty plea context. But *Shackelford*'s usefulness as precedent is limited because, in that case, defense counsel testified "that in fact he had advised petitioner of his rights prior to his plea." *Id.* at 150. There is nothing like that here.

In any event, like the United States Court of Appeals for the First Circuit in *Correa-Torres*, I am not satisfied that Beaulieu knew that he had a right to a revocation hearing merely because he was represented by counsel. 326 F.3d at 24 ("[T]he record does not reflect . . . that counsel reviewed [the probationer's] rights with him."). Instead, in the absence of other evidence, I would apply the presumption against the waiver of constitutional rights.

To summarize, whether there has been a knowing and voluntary waiver is determined by an examination of the particular facts and circumstances. Here, the circumstances do not show, by fair implication, a knowing and voluntary waiver of Beaulieu's constitutional rights.

V.

In a footnote, the majority says that the issue of whether Beaulieu waived his *Morrissey* rights was not made in a fashion sufficiently "independent" from his claim that he had a constitutional right to be advised of those rights. By declining to address whether Beaulieu knowingly and voluntarily waived his *Morrissey* rights, the majority wishes away the very issue on which we granted review.

In affirming Beaulieu's probation revocation, the court of appeals squarely held that Beaulieu had waived his constitutional right to due process in probation revocation. The last sentence of the court of appeals' decision on this issue states: "Therefore, **appellant's argument that he never validly waived his *Gagnon* or *Morrissey* rights** is unavailing given the appointment of counsel and his opportunity to contest the revocation with the assistance of counsel." *State v. Beaulieu*, No. A12-2192, 2013 WL 4779046, at *4 (Minn. App. Sept. 9, 2013) (Emphasis added.)

Beaulieu's petition seeking review of the court of appeals' decision presented the issue squarely. In our order granting review, we directed: "IT IS HEREBY ORDERED that the petition of Clarence Bruce Beaulieu for further review of the decision of the Court of Appeals be, and the same is, granted on the ***Morrissey*-waiver issue.** Review is denied as to all other issues." (Emphasis added.)

That Beaulieu briefed the waiver issue is clear. In the Table of Contents to Beaulieu's brief, subpart C, Beaulieu asserted: "Mr. Beaulieu Was Not Informed of His Constitutional Rights and Did Not Validly Waive Those Rights Before He Admitted the Probation Violation." Leaving no doubt, in subpart D, Beaulieu asserted: "A Waiver of

D-8

Constitutional Rights Must Be Knowing and Voluntary and Counsel Cannot Waive Such Constitutional Rights on Behalf of a Probationer Without a Personal Acknowledgement of Such Rights."

Beaulieu's brief argued two alleged constitutional violations: (1) a failure to advise of rights; and (2) a failure to obtain a knowing and voluntary waiver of rights. As the brief made clear, there were two issues: "[T]he district court erred by not advising Mr. Beaulieu of his *Morrissey* rights. **The next question is whether despite this failure, was there a valid waiver of these rights."** (Emphasis added.) Beaulieu's brief went on to argue that any waiver of a constitutional right must be accurately, voluntarily, and intelligently made. On whether representation by counsel alone was enough for a waiver, Beaulieu's brief cited the very case on which I rely in this dissent, *Correa-Torres*, and argued that the district court's failure to obtain a knowing and voluntary waiver required reversal. In other words, Beaulieu's brief forcefully pressed the waiver issue the majority now chooses not to see.

Finally, the issue of waiver was presented at oral argument. In the first minute, Beaulieu's counsel, the able Chief Appellate Public Defender, stated: "The issue before the Court in this case is whether Mr. Beaulieu's due process rights were violated by the district court's failure to advise him of his *Morrissey* rights **and obtain a knowing and voluntary waiver** of those rights prior to accepting his admission to the probation violation." (Emphasis added.) In other words, she made due process arguments based on: (1) the failure to advise and, alternatively, (2) the failure to obtain a waiver. The alternative issue was argued fully, with the justices posing several questions on the

subject of whether the court could infer that Beaulieu waived his rights simply due to his being represented by counsel.

Tellingly, the majority does not disagree that the issue of whether Beaulieu knowingly and voluntarily waived his *Morrissey* rights was decided by the court of appeals, that we granted review on it, and that it was argued orally. Instead, the majority insists that, when parsed, Beaulieu's brief somehow failed to present the issue as "independent." If Beaulieu's brief truly sidestepped the issue decided by the court of appeals on which we granted review, it would be more than a little odd that such a glaring omission was not mentioned—by the State or by any justice—at oral argument.

There is sidestepping going on here, but it's not in Beaulieu's brief. By imagining that the most important issue in the case is not before it, the majority fails to protect constitutional rights.

VI.

I respectfully dissent because, on this record, there is no evidence that Beaulieu knowingly and voluntarily waived his rights. I would reverse the court of appeals, vacate the probation revocation, and remand for a revocation hearing to be conducted in accordance with Minn. R. Crim. P. 27.04.[2]

---

[2] When a term of probation is revoked following an invalid waiver of the right to a revocation hearing, the "preferred practice" is to reverse and remand for a new revocation hearing. *See Correa-Torres*, 326 F.3d at 25; *see also State v. Modtland*, 695 N.W.2d 602, 608 (Minn. 2005) (reversing and remanding for "a new hearing" on the district court's revocation of probation because it did not address whether the probation violation was intentional or inexcusable or whether the need for confinement outweighed the policies favoring probation).

PAGE, Justice (dissenting).

I join in the dissent of Justice Lillehaug.


WRIGHT, Justice (dissenting).

I join in the dissent of Justice Lillehaug.