n the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3673

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TODD JONES,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 07-cr-10023-001 — **Michael M. Mihm**, *Judge.*

ARGUED SEPTEMBER 19, 2014 — DECIDED DECEMBER 16, 2014

Before BAUER, ROVNER, and WILLIAMS, *Circuit Judges.*

ROVNER, *Circuit Judge.* After being charged with conspiracy to distribute fifty or more grams of crack cocaine and three other drug charges, Todd Jones caught some lucky breaks. He pleaded guilty to the conspiracy and, in return, the district court dismissed the remaining charges on the government's motion. Jones qualified for the safety valve provision, and then became the beneficiary of a retroactive amendment to the United States Sentencing Guidelines

which ultimately led to a forty-six month sentence, followed by five years of supervised release. The conditions of supervised release required, among other things, that Jones refrain from any non-prescribed use of controlled substances, and submit a truthful written report to his probation officer within the first five days of each month. For a man originally facing a statutory minimum of 10 years' imprisonment, Jones's 3.8 year sentence would seem to be a gift.

Unfortunately, Jones looked this gift horse in the mouth. Six months after he completed his sentence of incarceration and began his supervised release, in January 2011, he was caught driving on a suspended license and charged with obstructing a police officer. As a result, the court modified his conditions of supervised release to require twenty-five hours of community service and completion of a cognitive behavioral therapy program. Jones accomplished both, but could not seem to keep himself out of trouble. In February 2012, he allegedly resisted an officer during a traffic stop for speeding; in October 2012, he was charged with aggravated battery relating to a bar fight; and in June 2013, he was charged with battery relating to another fight. Each time he eluded consequence either because the state filed no charges or declined to prosecute at a complaining witness's request.

At the same time, Jones was having trouble complying with other aspects of the requirements of his supervised release. After his release from prison he moved in with his girlfriend and mother of his child, but on December 27, 2012, she called Jones's probation officer and told him that she wanted Jones to move out immediately. The probation officer directed Jones to report to the probation office in Rock Island the next day, but he failed to do so. For the next two weeks he lived with a friend in Galesburg, Illinois, until she forced him to leave because she did not want her address registered with the probation office. On January 9, he moved

to another friend's home, but by April 2013, he was again homeless. That situation continued into May 2013, but he did not report his homelessness to his probation office as he feared the officer would "ride him" and direct him to stay in a shelter, which he did not want to do. Jones failed to file his monthly probation reports for April, May, June, or July 2013. He also failed to report to the probation office as directed on December 28, 2012.

After the battery charges against him were filed in June, the probation officer tried to find Jones, but remained unsuccessful until August 2013, when he located Jones at his own apartment in Galesburg. Having been found, Jones reported for a probation office visit on August 14, where his urine tested positive for marijuana. Only one other of his fifty-three timely urine samples tested positive for a controlled substance—the one taken on September 14, 2011—but twenty-four more tests were submitted late, and, of course, he was unavailable to the probation office for testing for four months in mid-2013.

On August 23, 2013, the probation office filed a petition to revoke Jones's supervised released based on seven alleged violations of the conditions of his release: two incidents of failing to report to the probation office, twice resisting a peace officer, aggravated battery, battery, and possession of marijuana. Jones agreed to admit to the possession of marijuana and two incidents of failing to report, in exchange for an agreement by the government to withdraw the remaining allegations.

The violation report prepared by the probation officer for the court noted that upon revocation, the court could impose a prison sentence up to the maximum sentence permitted by 18 U.S.C. § 3583(e)(3), which is three years for a Grade B violation. The Sentencing Guidelines recommended four to ten months' imprisonment for a Grade B violation by a Category

I offender. U.S.S.G. § 7B1.4 and § 7B1.1. The report also noted that because the bottom of that range was between one and six months, the Guidelines stated that the minimum four-month sentence could be satisfied by either (a) a sentence of imprisonment or (b) a sentence of imprisonment that included a term of supervised release with a condition that substitutes community confinement or home detention for any portion of the minimum term. *Id.* § 7B1.3(c)(1). Pursuant to 18 U.S.C. § 3583(h), the court could also impose an additional term of supervised release up to the term that the statute for the original offense authorized, less any term of imprisonment imposed upon revocation. The statute for the original offense authorized a life term of both imprisonment and supervised release. 21 U.S.C. § 841(b)(1)(A)(iii).

At the sentencing, the prosecutor highlighted Jones's unwillingness to submit to authority and to comply with the conditions of his supervision. Jones's attorney emphasized the relatively minor nature of the violations and the fact that Jones was recovering from back surgery, had established a stable residence, had committed no violations while on bond awaiting the revocation sentencing, had successfully completed a welding program, a substance-abuse evaluation (where he was found to not have a substance abuse problem), and a cognitive behavioral therapy program. Jones's attorney asked the court to substitute home confinement for any period of imprisonment, but did not make any requests nor any mention whatsoever regarding additional supervised release.

The court, after accepting his guilty pleas and finding him guilty of the supervised release violations, announced a sentence of four months—the bottom of the Guidelines range, followed by a thirty-six-month period of supervised release. The court stated, "It looks to me from reading this [presentence report] that we did not have the defendant's

full attention, especially after he got his welding degree. And then going for months without filing a report indicates again, I think, what his attitude is here." (Tr. 11/26/13, p. 18-19). The court then advised Jones to contact his probation officer when issues, like loss of housing, arose.

Jones addressed the court stating that he thought, by pleading guilty, that he would not have continued supervised release after his sentence. He noted that he had been on probation for forty-one months and thought another thirty-six was excessive. The court responded by saying:

> Well, that's something we always think about, but in your case, I think it's necessary to put you back on supervised release…"[I]f you get into that period of supervision for a year, year and a half and you're still okay, you're not committing violations, then I would consider the possibility of early discharge.

*Id.* p. 22-23.

Jones completed the imprisonment portion of his sentence on May 30, 2014, but on appeal argues that the term of supervised release and imprisonment were plainly unreasonable.

Our review of a sentence for violating a term of supervised release is highly deferential, and we will uphold that term unless it is "plainly unreasonable." *See U.S. v. Kizeart*, 505 F.3d 672, 674 (7th Cir. 2007).

Jones argues that the court violated his due process rights under the Fourteenth Amendment by failing to consider alternatives to incarceration. Jones really means to invoke the due process clause of the Fifth Amendment which applies to the federal government. In either case, however, the Supreme Court has "considered whether the Due Process

Clause of the Fourteenth Amendment generally requires a sentencing court to indicate that it has considered alternatives to incarceration before revoking probation," and concluded that it does not. *Black v. Romano*, 471 U.S. 606, 607, 613 (1985). The defendants cite a string of cases from the 1970s and 1980s, including the Eighth Circuit's appellate decision in *Black v. Romano*, 735 F.2d 319 (8th Cir. 1984), but that very case was overturned by the Supreme Court (as we cited above), which also rejected not only the reasoning in *Black* itself, but also made clear that the holdings in the two other two cases on which Jones relies—*Gagnon v. Scarpelli*, 411 U.S. 778 (1973) and *Morrissey v. Brewer*, 408 U.S. 471 (1972), do not compel a court to consider alternatives to incarceration in probation revocation proceedings.

Jones received all the process due him at his revocation proceedings. He was given adequate notice, represented at all times, appeared at the hearing, and was afforded an opportunity to make a statement and present information in mitigation. *See* Fed. R. Civ. P. 32.1, and *U.S. v. LeBlanc*, 175 F.3d 511, 515 (7th Cir. 1999) (Rule 32.1 largely codified *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972), which defined Fifth Amendment due process rights, including a limited confrontation right, in parole revocation hearings).

As the government points out, the district court could not have abused its discretion, much less plainly erred, when it revoked supervised release after Jones admitted that he possessed marijuana, as such a revocation is mandatory under 18 U.S.C. § 3583(g)(1) ("If the defendant possesses a controlled substance in violation of [a condition of supervised release]…the court *shall* revoke the term of supervised release and require the defendant to serve a term of imprisonment. …") *U.S. v. Hondras*, 296 F.3d 601, 602 (7th Cir. 2002).

Jones also claims that his sentence was plainly unreasonable because the district court did not give appropriate weight to the policy statements and sentencing factors in 18 U.S.C. § 3553. Both the term of incarceration and the term of supervised release were within the range suggested by the Guidelines and thus are presumed to be reasonable on appeal. *Gall v. U.S.*, 552 U.S. 38, 51 (2007); *U.S. v. Horton*, 770 F.3d 582, 585 (7th Cir. 2014). Moreover, his assertion that the court failed to consider the Chapter 7 policy statements and § 3553 factors is both generic and unsupported and also factually incorrect.

Jones never states which policy factors the court should have considered other than to say that the district court should have given appropriate weight to U.S.S.G. Ch. 7 policy statements. That is the beginning and end of his discussion of the matter. For this reason, we deem the argument waived (*U.S. v. Bryant*, 750 F.3d 642, 651 (7th Cir. 2014)). But even were it not, the court did indeed consider Guidelines Chapter 7 when sentencing Jones, specifically, chapter 7B1.4. The court reviewed the Sentencing Report which turned to the Revocation Table in § 7B1.4 of the policy statements to calculate that Jones violation qualified as a Grade B violation and that he had a criminal history of Category I which led to a Guideline range of four to ten months, and supervised release up to life less any term of imprisonment imposed on revocation. (Tr. 11/26/13, p.5-6). After announcing the range, the court selected a sentence at "the bottom of the guideline range [as] the proper place; that's four months." (Tr. 11/26/13, p.20). The court also considered substituting community confinement for a term of imprisonment, first listening to Jones's lengthy position that

> home confinement in this situation would be appropriate because there is now a stable residence that he has that he could be confined to.

> Electronic monitoring can be put in place, and
> he can continue to look for a job and partici-
> pate in physical rehabilitation. To order him to
> jail or to prison at this point, Your Honor,
> would really defeat the purpose, which is to
> have stable housing to get on the right track,
> and to be able to comply with all the condi-
> tions of supervision which he has been doing
> since he was released on bond.

(Tr. 11/26/13, pp.17-18). Having heard the argument, the court then queried the government about its "position on home confinement here." *Id.* p.18. The government respond-ed by saying that it was asking for a sentence of imprison-ment within the range. *Id.*

As for the § 3553 sentencing factors, circuits are split as to whether a district court need consider § 3553 factors when, as here, the revocation is mandatory under § 3583. *Compare, U.S. v. Thornhill*, 759 F.3d 299, 311 (3d Cir. 2014) (stating that, "Meaningful consideration of the § 3553(a) factors is also re-quired in revocation proceedings.") *with U.S. v. Garza*, 706 F.3d 655, 658 (5th Cir. 2013); *U.S. v. Giddings*, 37 F.3d 1091, 1095 (5th Cir. 1994) (holding that "when revocation…is mandatory under 18 U.S.C. § 3583(g), the statute does not require consideration of § 3553(a) factors."). We need not de-termine where our Circuit stands, as the district court did indeed consider § 3553 factors.

A court need not consider the § 3553 factors in check-list form. The district court judge need only form an adequate statement of her reasons, consistent with section 3553(a), for thinking the sentence that she has selected is indeed appro-priate for the particular defendant. *U.S. v. Pollock*, 757 F.3d 582, 591 (7th Cir. 2014). The explanation must be sufficient to allow a court of appeals to assess the reasonableness of the

sentence imposed. *U.S. v. Conaway*, 713 F.3d 897, 903 (7th Cir. 2013).

In this case, the court noted that Jones's multiple violations indicated that the court "did not have the defendant's full attention, especially after he got his welding degree." And the court also noted that Jones's failure to report for four months indicated that his attitude was not respectful of the process. (Tr. 11/26/13, p.18-19). Furthermore, the court's statement that it might discharge the second half of the supervision period if Jones exhibited improved behavior, demonstrates that the court was indeed thinking about § 3553 factors such as the characteristics of the defendant, deterrence, the need to protect the public from further crimes, and the need to promote respect for law and provide just punishment. *See* 18 U.S.C. § 3553.

The amount of justification that an appeals court will require of a district court depends on how far the judge's sentence departs from the Guidelines sentence. *Gall v. U.S.*, 552 U.S. 38, 51 (2007); *Conaway*, 713 F.3d at 903. In this case, the four month imprisonment sentence was the lowest sentence possible within the Guideline range. The supervised release portion of the sentence was also well-within the available range which allowed for lifetime supervision. Given the fact that both the sentence and the supervised released were within the Guidelines range (and indeed, on the very low end), the judge's justification for the sentence was sufficient.

Jones has never directed this court "to anything specific that the district court failed to consider or take into account." *Pollock*, 757 F.3d at 591. The crux of his argument is only that his violations were minor, and that "some of the things that he's done are good," (Tr. 11/26/13, p.16) and that he is therefore not deserving of even the lowest end sentence and the term of supervised release imposed. But this is just the

type of discretionary decision that belongs to a district court judge. Despite being given a second chance by his low-end sentence on the merits, Jones could not keep himself in line while on supervised release. The district court felt that the low-end sentence of four months imprisonment followed by thirty-six months of supervised release would get Jones's attention and keep him on the straight and narrow. We see no reason to disagree.

AFFIRMED.