In the

# United States Court of Appeals

### For the Seventh Circuit

No. 18-2811

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DELRICO J. NELSON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:04-cr-10073-001 — **Sara Darrow**, *Chief Judge.*

ARGUED JULY 10, 2019 — DECIDED JULY 24, 2019

Before EASTERBROOK, BARRETT, and BRENNAN, *Circuit Judges*.

PER CURIAM. Delrico Nelson appeals the revocation of his supervised release and ensuing 60-month prison sentence. At his revocation proceeding, he waived his right to a contested hearing and stipulated that the government would be able to provide evidence to show that he violated his terms of release. Nelson now argues that his waiver was not knowing and

voluntary. Because the totality of the circumstances demonstrates otherwise, we affirm the district court's judgment.

## I. BACKGROUND

In 2006, Nelson pleaded guilty to one count of possessing more than 50 grams of cocaine with the intent to distribute, *see* 21 U.S.C. § 841(a)(1), (b)(1)(A), and was sentenced to 16 years' imprisonment and 10 years' supervised release. After being released from prison in 2014, Nelson—then serving supervised release—was arrested and charged with possession of a controlled substance with intent to deliver. Based on Nelson's stipulation to violating his conditions of release, the district court (Judge Mihm) revoked Nelson's supervised release and sentenced him to 30 months' imprisonment and 18 months' additional supervised release.

Nelson began his second term of supervised release in 2017. In November that year, Nelson's parole officer petitioned to revoke his supervised release based on allegations that he had committed two counts of aggravated battery, one count of possession of cannabis with intent to deliver, and one count of possession of cannabis.

Nelson was brought to the district court (before Magistrate Judge Shields) for an initial hearing on the petition to revoke. The judge asked defense counsel whether he had the chance to discuss the revocation petition with Nelson, and counsel confirmed that he had. The judge then asked Nelson if he understood "what the government [sought] to have occur if this petition would be granted," to which Nelson said yes. The judge scheduled the final revocation hearing for two months later.

At the final hearing, the parties informed the court (this time, Judge Darrow) that the government had agreed to recommend a lower sentence (41 months' imprisonment— 10 months below the recommended guideline range[†]) in exchange for Nelson's stipulation that he violated his terms of release and waiver of his right to a contested revocation hearing. Judge Darrow informed Nelson that, if he wished to proceed and so stipulate, his stipulation could not be conditioned on the court's acceptance of the proposed sentence. Nelson responded "I ain't got no say no way. Just go on and agree to it." The judge expressed concern about the voluntariness of his stipulation. She directed Nelson to confer with his lawyer, who, after an exchange with Nelson, assured the court that Nelson understood "all the principles" and did not "want to fight it anymore." The judge asked Nelson if he agreed with his attorney's statement, and Nelson answered that he did.

Nelson, under oath, then stipulated that the government would be able to provide enough evidence for the court to find by a preponderance of the evidence that he had violated conditions of his supervised release. The judge then questioned Nelson about the voluntariness of his stipulation and said that she sensed reluctance. Nelson responded that he was frustrated with the situation because he had "no say in nothing that happened." Nelson added, however, that he was "okay with stipulating" and did not need a full hearing because he had violated the conditions of his supervised release

---

[†] Based on Nelson's criminal history category, the guidelines recommended 51–63 months' imprisonment, *see* USSG § 7B1.4(a), though 18 U.S.C. § 3583(e)(3) capped any sentence at 60 months.

"just by being arrested." The judge proceeded to accept the stipulation.

The government and defense counsel then argued in support of their jointly proposed 41-month prison term. The government defended the need for a downward departure because Nelson's stipulation avoided the expense and time of conducting a contested evidentiary hearing and, besides, there were "some Fourth and Fifth Amendment issues with proving up the violations beyond a reasonable doubt." The government added that there was less of a need for specific deterrence because Nelson would likely be prosecuted and receive a sentence in state court for the underlying violations. Defense counsel seconded the need for a lesser penalty, given that Nelson was being punished not because he had been found guilty beyond a reasonable doubt of committing state law violations, but because he had violated his terms of supervised release by a preponderance of the evidence.

Nelson was then invited to allocute. He began by stating that he "was under the impression from reading the statute … that just being arrested [was] a violation of [his] term." The district court interrupted him: "Well, just being arrested isn't enough, but [it would be enough] if you're agreeing that the government would call the witnesses … to testify and that they would testify to the facts that they outlined. So it's not just being arrested." When asked if he understood that, Nelson answered yes.

The court ultimately rejected the parties' joint recommendation and sentenced Nelson to 60 months' imprisonment, the statutory maximum. The court did not agree that a downward departure was warranted, explaining that it was unpersuaded that avoiding the expense of a contested hearing

justified a reduced sentence. The court then dismissed as speculative the government's suggestion that Nelson would be separately convicted in state court, and so it refused to adjust the sentence based on that argument. Finally, the court was concerned with Nelson's criminal history and the fact that his prior revocation and subsequent sentence did not deter him from engaging in unlawful conduct.

## II. ANALYSIS

Nelson's appeal centers on one overarching argument: that his waiver of a contested revocation hearing was not knowing and voluntary. *See United States v. Boultinghouse*, 784 F.3d 1163, 1172 (7th Cir. 2015) (explaining that defendant's waiver of any procedural right granted by Rule 32.1 must be knowing and voluntary); *United States v. LeBlanc*, 175 F.3d 511, 515 (7th Cir. 1999) (same).

At the outset, the parties disagree on the standard of review that governs this issue. Nelson asserts that the question whether a waiver is knowing and voluntary is subject to de novo review. The government counters that plain error must apply when a defendant like Nelson challenges his waiver of a contested revocation hearing for the first time on appeal. *See* FED. R. CRIM. P. 52(b). The government is correct: Nelson's failure to preserve his challenge constitutes forfeiture and limits this court's review of his claim to plain error. *See United States v. Vonn*, 535 U.S. 55, 71 (2002); *United States v. Luepke*, 495 F.3d 443, 446–47 (7th Cir. 2007); *United States v. Reyna*, 358 F.3d 344, 350 (5th Cir. 2004) (en banc).

As for the merits, Nelson first argues that his waiver was not knowing and voluntary because he did not understand the charges against him. Pointing to his colloquy with Judge

Darrow, he contends that he misunderstood whether "just be-ing arrested" constituted a violation of his release. But even if we assumed that Nelson still was confused after the district judge told him that "being arrested isn't enough" to constitute a violation, the totality of the circumstances show that his waiver was knowing and voluntary. Nelson had the oppor-tunity to review the violation memorandum and discuss it with his attorney in advance of the hearing. *See* FED. R. CRIM. P. 32.1(b)(2)(A); *United States v. Jones*, 774 F.3d 399, 403 (7th Cir. 2014) ("[The defendant] received all the process due him at his revocation proceedings. He was given adequate no-tice, represented at all times, [and] appeared at the hear-ing…."). He did not object to the contents of the revocation memorandum, and further conceded that the government could and would present facts demonstrating that he commit-ted the offenses of aggravated battery, possession, and intent to distribute. And he acknowledged that the offense that led to his prior revocation of supervised release resembled the of-fenses that he was alleged to have committed this time.

The cases that Nelson relies on in support of his argument are unavailing. In *United States v. Correa-Torres*, 326 F.3d 18 (1st Cir. 2003), the First Circuit concluded that the appellant's revocation waiver was not knowing and voluntary because the charges underlying his alleged violation were never set forth in the revocation proceedings, and the appellant ap-peared to believe that he did not commit a crime at all, *id.* at 24. But here, Nelson read the violation memorandum and de-clared that he understood the charges against him: aggra-vated assault, possession of cannabis, and intent to distribute cannabis. The government also orally described the factual predicate of the allegations during the hearing. Likewise, Nel-son cites *United States v. Pineda-Buenaventura*, 622 F.3d 761

(7th Cir. 2010), for the proposition that a waiver is unknowing when a court fails to remedy a mistaken understanding that an arrest by itself violates the terms of supervised release. But that case involved allegations of an inchoate crime, and the defendant there demonstrated a lack of understanding of what crime he was charged with committing. Here, Nelson acknowledged what conduct he was alleged to have engaged in and what the resulting charges were. And unlike the defendant in *Pineda-Buenaventura*, Nelson admitted that the government here had sufficient evidence to prove that he committed the crimes as charged.

Nelson next contends that his waiver was not knowing and voluntary because he did not understand that he would be waiving his right to present evidence and cross examine witnesses. *See* FED. R. CRIM. P. 32.1(b)(1)(B). But the district court was not required to address in checklist fashion each procedural right that Nelson was waiving when stipulating that he had violated his terms of release. *See Boultinghouse*, 784 F.3d at 1172. Instead, "where the record confirms that the defendant had a sufficient grasp of a particular right or consequence of the waiver that the court may have omitted from its admonishments, we will sustain the waiver as knowing notwithstanding the gap in the colloquy." *Id.* And based on the record, Nelson had to have understood the rights that he was waiving and the consequences of doing so. He was represented by counsel, and he said that he understood that he was waiving his right to a full hearing and his right to challenge the length of his sentence. What is more, earlier at his first revocation hearing (where he similarly stipulated that he had violated the terms of his release), Nelson waived his rights to compel witnesses to appear on his own behalf and to cross-examine the government's witnesses. Based on his prior

experience waiving a contested revocation hearing, *see United States v. Scott*, 900 F.3d 972, 975 (7th Cir. 2018), Nelson had to have known what rights he was waiving by foregoing a full evidentiary hearing.

Finally, Nelson contends that his waiver was not knowing and voluntary because it was premised on erroneous legal advice. He contends that, had he known that his lawyer's arguments for a 41-month sentence would have been summarily dismissed by the court, he never would have waived his right to a contested revocation hearing. But he cites no cases to suggest that reliance on a lawyer's unsuccessful arguments renders such a waiver not knowing and voluntary. The cases that he relies on for this contention deal with the ineffective assistance of counsel, *see United States v. Jones*, 861 F.3d 687, 690–91 (7th Cir. 2017); *United States v. McCoy*, 215 F.3d 102, 107–08 (D.C. Cir. 2000), which is not a claim that he develops here.

We AFFIRM the district court's judgment.