**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 9, 2020[*]
Decided April 17, 2020

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 19-1853

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 13-cr-10025 |
| BRANDON S. WILSON, *Defendant-Appellant.* | Sara Darrow, *Chief District Judge.* |

## O R D E R

While on federal supervised release for his unlawful possession of a firearm, the State of Illinois charged Brandon Wilson with four crimes related to his possession and manufacturing of methamphetamine. Wilson subsequently pleaded guilty in state court to one count of possession of methamphetamine-making materials and the court sentenced him to four years in an Illinois prison. Concurrently, the United States petitioned a federal court to revoke Wilson's supervised release based on the same set of allegations.

---

[*] We granted the parties' joint motion to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the Court. Fed. R. App. P. 34(a)(2).

When Illinois paroled Wilson from its custody, the United States immediately detained him for violating the conditions of his supervised release. Wilson eventually admitted the government's allegations and a federal district court revoked his release, sentencing Wilson to two additional years in federal prison. Wilson now appeals that sentence, arguing (1) he did not knowingly and voluntarily waive his right to a revocation hearing, (2) he did not receive the effective assistance of counsel during his revocation proceedings, and (3) the district court erred in sentencing him because it did not consider the relevant statutory factors or provide sufficient reasons for its judgment. We affirm.

Wilson originally pleaded guilty in federal court to the unlawful possession of a firearm by a felon. At that time in 2013, Wilson already had at least four felony convictions under Illinois law: two for possession of a controlled substance (2001 and 2007); one for aggravated fleeing from the police (2007); and one for possession of methamphetamine precursors and manufacturing materials (2008). The court sentenced Wilson to sixty-five months in prison and three years of supervised release. (The court later reduced Wilson's prison term to forty-nine months on the government's motion.)

During his supervised release, police caught Wilson at home with methamphetamine manufacturing materials and precursors, along with approximately one gram of methamphetamine, more than eleven grams of clonazepam, and some marijuana. A week later, Illinois charged Wilson with various narcotics crimes. Wilson pleaded guilty to one count of possession of methamphetamine manufacturing materials and the state court sentenced him to four years in prison.

In 2019, Illinois paroled Wilson to federal custody in light of the United States' outstanding petition to revoke supervised release. The petition alleged four violations of Wilson's supervised release corresponding to the four charges from the state case. In the probation officer's violation memorandum, the officer notified the parties and the court that the Sentencing Commission's policy statement recommended a range of 18–24 months in prison based on Wilson's criminal history.

At the revocation hearing, the court asked Wilson whether he had reviewed the allegations against him and discussed them with counsel. Wilson answered: "Most of it, Your Honor." After Wilson and his counsel conferred some more, counsel informed the court that Wilson wished to clarify that "there was no finished product of methamphetamine" seized during the search of his house. Counsel confirmed with the court that Wilson's resulting state conviction was for possession of methamphetamine-manufacturing

materials. Wilson then reassured the court that he had enough time to discuss the violations with his counsel and he was satisfied with the advice he received. Wilson subsequently admitted to the four violations and stated that he was not doing so under force or threat. The court accepted Wilson's admission and found there was a sufficient factual basis to support it.

Turning to the violation memorandum, both the government and defense counsel apprised the court that they had no objections to it. The court then specifically inquired the same of Wilson, who responded that he had reviewed the memorandum with his attorney and had no objections to its contents. The court stated that this was a Grade B violation with a criminal history category V. Accordingly, the policy-statement range was 18–24 months and the maximum term of imprisonment was 24 months. The parties agreed with those observations and the court adopted the violation memorandum.

Both parties declined the district court's invitation to introduce evidence. Thereafter, the court entertained arguments regarding the statutory sentencing factors. Wilson contended that the court should resist the temptation to impose a maximum sentence and that no further supervised release should be imposed because Wilson deserved a sentence under 24 months. Wilson asserted he already served 24 months in state prison for the same conduct that led to revocation. Wilson maintained that his mental health disorders and drug addiction interfered with his rehabilitation. He therefore vowed to seek treatment and achieve sobriety.

Before announcing its judgment, the court noted that several factors guided its discretion in considering an appropriate sentence. Specifically, the court explained that supervised release protects the public from the offender during reintegration into society and provides the offender with the support needed to start leading a law-abiding life. The court lamented that Wilson's supervised release was an "epic failure."

The court acknowledged Wilson's addiction, but stated: "The problem is that the opportunity to get that help was offered to you by probation and you didn't take advantage of it. So it leaves me with … very few options left since we already tried that and it didn't work." Additionally, the court recognized Wilson's mental health diagnoses, although it mentioned "that there doesn't seem to be any efforts left for probation to make to assist you in addressing those problems." The court thought its sentence was necessary to deter Wilson from committing crime because his previous sentences were not enough.

Summing up, the court said:

> I don't have really any options left but to give you the maximum
> sentence because that is the only sentence I feel is adequate to
> promote respect for the law, to provide specific deterrence value
> to you, and provide general deterrence … regarding people who
> violate these important conditions of supervised release.

The court added that it hoped Wilson would address his "substance abuse and mental health issues," reiterating that he was "going to have to do that on [his] own" because any additional supervision would be of no help to Wilson given his noncompliance.

Following its statement of reasons, the court revoked Wilson's supervision and ordered his reimprisonment for two years, with no supervision afterwards. Before adjourning, Wilson turned down the court's offer to further elaborate on any of the reasons for imposing the sentence. This timely appeal followed.

Wilson contends (1) he did not knowingly and voluntarily waive his right to a revocation hearing, (2) he did not receive the effective assistance of counsel during his revocation proceedings, and (3) the district court erred in sentencing him because it did not consider relevant statutory factors or provide appropriate reasons for its judgment.

*First*, Wilson waived his right to challenge the basis for his revocation. He represented to the court that he had read both the revocation petition and his violation memorandum, reviewing each with counsel in advance of the hearing. The violation memorandum walked through the allegations and the consequences of admitting to them, including the maximum term of reimprisonment and the policy-statement range. Wilson did not object to any of this. His lack of objection is all that our precedent requires to find waiver. *See United States v. Nelson*, 931 F.3d 588, 591 (7th Cir. 2019) (per curiam). Wilson's remark that he had reviewed "most" of the allegations does not alter this outcome because, when read fairly in context, all Wilson wanted was an opportunity to ask counsel a fact question. Counsel answered Wilson that his concern was irrelevant to the charged violation but still noted it for the record.

Moreover, the district court did not need to advise Wilson of each procedural right he was waiving by admitting to the petition. *See id.* We have highlighted before that we do not require district courts "to address in checklist fashion each procedural right that [the defendant] … waiv[es] when stipulating that he ha[s] violated his terms of release."

*Id.* Quite the contrary, "where the record confirms that the defendant had a sufficient grasp of a particular right or consequence of the waiver that the court may have omitted from its admonishments, we will sustain the waiver as knowing notwithstanding the gap in the colloquy." *United States v. Boultinghouse*, 784 F.3d 1163, 1172 (7th Cir. 2015). The totality of the circumstances demonstrate that Wilson's waiver was knowing and voluntary. Consequently, the court did not plainly err, and even if it did, Wilson neither alleges nor proves that he suffered prejudice as a result.

*Second*, Wilson received the effective assistance of counsel. Wilson insists that his attorney should have argued that Wilson was actually innocent of the felon-in-possession conviction that led to his original imprisonment. Assuming for the sake of argument that Wilson had the right to effective assistance of counsel during his revocation proceedings, his claim was not cognizable in such a setting anyway. *See United States v. Flagg*, 481 F.3d 946, 950 (7th Cir. 2007) ("The proper method for challenging a conviction and sentence is through direct appeal or collateral review, not a supervised release revocation proceeding."). Wilson's revocation hearing did not provide him with a vehicle to challenge his underlying conviction and sentence. Hence, we do not reach the merits.

*Third*, and finally, the district court appropriately considered the 18 U.S.C. § 3553(a) factors relevant to revocation, addressed Wilson's arguments for a lower term of reimprisonment, and imposed a sentence that was not plainly unreasonable. *See United States v. Kizeart*, 505 F.3d 672, 674–75 (7th Cir. 2007) (describing "plainly unreasonable" as a "more limited scope of appellate review" in revocations than "unreasonable" is in sentencings, calling it "the narrowest judicial review of judgments we know"). So long as the court considers the factors and adequately states its reasons, "we do not … require [it] to discuss any particular factors in any particular fashion when imposing a sentence of incarceration …." *United States v. Bloch*, 825 F.3d 862, 870 (7th Cir. 2016).

Here, the court supported its conclusions with undisputed facts, relying heavily on Wilson's history and characteristics, in addition to the nature and circumstances of his newest offense. It underscored that its sentence addressed an independent harm—namely, Wilson's violation of his federal supervision—that the state sentence did not cover. Such a violation is a significant breach of trust and sows disrespect for the law. Wilson airs many of his other grievances for the first time on appeal and we elect not to review them. Suffice it to say that Wilson's sentence fell within the policy-statement range and we find it a far cry from plainly unreasonable.

For the reasons stated above, we AFFIRM the judgment of the district court.